GIVEN v. TIMES–REPUBLICAN PRINTING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1902.)

No. 1,608.

1. ESTOPPEL IN PAIS.

One who, by his acts or representations, or by his silence when he ought to speak out, either intentionally or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial.

2. SAME—VENDOR OF STOCK ASSERTING INDEBTEDNESS OF CORPORATION TO HIM.

The vendor of stock may, by his representations or silence, estop himself from asserting against a purchaser an indebtedness of the corporation to him. The sole stockholder of a corporation, by his management thereof, by his treatment of his account with it, by his statement of its resources and liabilities, and by his silence regarding any liability of the corporation to him, induced a purchaser to buy his stock in the belief that the corporation was not indebted to him. *Held*, the vendor was estopped from asserting or enforcing any indebtedness of the corporation to him as against the purchaser of his stock.

3. EQUITY—STOCKHOLDER MAY MAINTAIN BILL TO ENJOIN ACTION AT LAW AGAINST CORPORATION.

A stockholder of a corporation, who has been induced by the representations or culpable negligence of a vendor to buy his stock in the belief that the corporation is not indebted to him, may maintain a bill in equity to restrain the vendor from prosecuting an action of debt against the corporation.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

J. M. Parker, for appellant.

A. B. Cummins, James P. Hewitt, Craig T. Wright, and T. Binford, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree in favor of S. C. McFarland and the Times-Republican Printing Company, a corporation, to the effect that the defendant, Welker Given, is estopped from maintaining an action at law against the corporation, which he commenced on March 15, 1898, in the circuit court for the Southern district of Iowa, to recover the sum of $8,375 and interest. 106 Fed. 253. In the petition in that action Given alleged that the corporation was indebted to him (1) for $6,000, which he loaned to it on December 9, 1895, and on a promissory note which the corporation made and delivered to him for this $6,000; (2) for $2,000, which he loaned to the corporation on November 25, 1895, and on a promissory note which the corporation made and delivered to him for this $2,000; and (3) for $375 on account of his salary for the months of July, August, and September, 1895. The gravamen of the bill to restrain this action is that Given was the owner of all the capital stock of the printing company from February, 1893, until May, 1896, and that in the latter month, by representations, and by

silence when he ought to have spoken out, he induced the complainant, who did not know that the corporation was indebted to him, to buy all its stock, and to pay him $19,000 for it, in the belief that the printing company was not indebted to him in any amount whatever.

The decree which grants the relief sought by the bill is assailed upon two grounds,—that there was no equity in the bill, because the complainants had an adequate remedy at law, and that the proof did not sustain its allegations. In support of the first contention the rules that an estoppel is sometimes a complete defense at law, and that a bill to restrain an action at law cannot be maintained on grounds which would constitute a complete defense to it, are invoked. They have no application to this suit, however, because the estoppel pleaded in this bill would have been no defense to the action at law, which has been enjoined. That action was against the corporation. The printing company was the only defendant in it. But the printing company had not purchased any of its stock or of its property from Given, had not been misled into the belief that it owed him nothing, and had not acted on that belief to its injury. There was, therefore, no estoppel in its favor, and it could not successfully defend the action against it upon that ground. And yet, if it was true that McFarland had been induced by the deceitful representations or silence of Given to buy all the stock of this corporation for $19,000 in the belief that it owed him nothing, a judgment against the corporation for the $8,375 and interest, which Given claimed in his action at law, would inflict a great injury upon McFarland, against which he would be utterly remediless at law, because the judgment against the corporation would be conclusive evidence against him, its only stockholder, of its indebtedness to Given, and it would be paid out of his property, because the corporation was solvent, and all its assets were really the property of McFarland. In this way it appears that the estoppel which lies at the basis of this suit in equity constituted no defense to the action at law. It was no defense for the corporation, because no estoppel had arisen in its favor. It was no defense for McFarland, because he was not a party to that action, and therefore he could not interpose any defense to it. He was, therefore, remediless at law, and the bill well stated a perfect cause of action in equity in his behalf. Nor is the rule that a stockholder cannot maintain a suit unless he has first called upon the corporation to bring it, and been met by a refusal, which is cited by counsel, applicable to this case, because the estoppel which lies at the foundation of this suit did not arise in favor of the corporation, and it could not have maintained a bill to restrain the action at law upon that ground.

The second objection to the decree is that it is not sustained by the evidence. But the proof discloses these facts: Given owned all the stock of the printing company from 1893 until May, 1896. During a large portion of this time it was managed by McFarland, because Given was ill. At times its business was profitable, and at other times it was not so. Neither Given nor McFarland paid much attention to the corporate organization. No dividends were declared when profits were earned, and no corporate action was taken when losses

were incurred. The bookkeeper of the corporation kept an account with Given upon its books, in which the latter was charged with the moneys which he drew out and credited with those which he paid in. But none of the parties to this transaction treated this account as evidence of any indebtedness of Given to the corporation or of the corporation to Given. It stood as a mere memorandum of the amounts drawn out and paid in by the sole stockholder of the corporation. This is well exemplified by the fact that at the close of the year 1894 this account disclosed a balance due to Given from the corporation of $3,134.07, which was charged off to profit and loss, so that the account was balanced by direction of Given, because he was the sole stockholder; and if there were any profits he was entitled to them, and if there were any losses he must suffer them. In November and December, 1895, Given furnished to the corporation $6,000 and $2,000 to buy needed machinery, and these amounts were placed to his credit on his account in the books of the corporation. On May 13, 1896, when the sale to McFarland was consummated, there was, according to this account, a balance of $3,638.35 due from the corporation to Given. The account books of the printing company contained no reference to the promissory notes set forth in Given's petition in his action at law. In this state of the case Given, on May 4, 1896, wrote to McFarland:

"Mr. McFarland: An offer has come to me suddenly for the T-R,—or a large interest in it,—just at a time when I need money. But I wish first to make you an extraordinarily low offer & hope you can arrange to accept it at once, for others are urgent. Give me $7,500 cash and my note and assume my paper at Marshalltown Bank, and the T-R is yours. But it will be necessary to act at once."

The "T-R" was the Times-Republican Printing Company. The note referred to in this letter was a promissory note made by Given and held by McFarland, on which a balance of $4,000 was owing, Given's paper at the Marshalltown Bank, mentioned in the letter, consisted of his promissory notes for $7,500, which were held by that bank. Four days after this letter was delivered, Given directed McFarland, who was managing the business of the printing company, to have a statement of the resources and liabilities of the corporation made, which should exclude the account with him; and this statement was made, dated May 10, 1896, and delivered to Given by McFarland. Given procured this statement to use in a negotiation which was then pending for a sale by him of the Times-Republican to one Dotson. None of the notes or accounts on which Given based the action at law here in issue were mentioned in this statement. Given never informed McFarland of the existence of the promissory notes set forth in his petition, and never claimed or suggested to him at any time during the negotiation for the sale that the corporation was indebted to him for the $8,375, for which he has sued. McFarland did not know that any such promissory notes had been made, but he knew the condition of the account books of the company, and the manner in which the account with Given had been treated, and he knew the contents of the statement prepared by direction of Given for use in his negotiation with Dotson. The negotiation with

Dotson did not result in a sale, and on May 13, 1896, McFarland complied with the terms of Given's offer to him of May 4, 1896. Given assigned to him all the stock of the corporation, and he took possession of all its property. He testified that by the acts of Given which have been mentioned, by his treatment of his account with the corporation, by his exclusion of it from the statement of the resources and liabilities of the printing company which he caused to be prepared for use in his attempted trade with Dotson, by his failure to speak of the notes upon which he has now sued, of the existence of which McFarland was ignorant, and by his failure to claim or suggest that the corporation was indebted to him in the sum of $8,375, which he now claims from it, he was induced to believe, and did believe, that the corporation owed Given nothing. He further testified that this belief induced him to make the purchase of the stock, and to pay the sum of $19,000 for it, and that he would not have done either of these things if he had been notified of this indebtedness of the corporation to Given. There is much more evidence in this record, but none which materially affects the conclusion which the facts and the evidence which have been recited, compel.

No principle is more universal in the jurisprudence of civilized nations, no principle is more equitable in itself or more salutary in its effects, than that one who, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial. This principle is equitable, because it forbids the untruthful or culpably negligent deceiver from profiting by his own wrong at the expense of the innocent purchaser or contractor who believed him. It is salutary, because it represses falsehood and fraud. It rests on the solid foundation of our common sense of justice, which revolts at the idea of rewarding the intentional or culpably negligent deceiver at the expense of the innocent purchaser who believed him. Paxson v. Brown, 61 Fed. 874, 882, 10 C. C. A. 135, 143, 27 U. S. App. 49, 60; Union Pac. R. Co. v. United States, 67 Fed. 975, 979, 15 C. C. A. 123, 127, 32 U. S. App. 311, 318; Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 293, 22 C. C. A. 171, 192, 40 U. S. App. 257, 293, 34 L. R. A. 518; Cairncross v. Lorimer, 3 Macq. 828; Dickerson v. Colgrove, 100 U. S. 578, 582, 25 L. Ed. 618; Kirk v. Hamilton, 102 U. S. 68, 75, 26 L. Ed. 79; Evans v. Snyder, 64 Mo. 516; Pence v. Arbuckle, 22 Minn. 417; Crook v. Corporation of Seaford, L. R. 10 Eq. 678; Faxton v. Faxon, 28 Mich. 159. The case at bar falls far within this just and salutary rule of equity jurisprudence. The acts of Given in the management of the business of this corporation, in the treatment of his account with it, and in the preparation of the statement of its resources and liabilities for the purpose of making a sale, without including therein any statement of his account, and his silence concerning any indebtedness of the printing company to him during his negotiations with McFarland, when it was his duty to speak out and give warning of his unknown notes and his concealed claim, were

well calculated to lead a reasonably prudent man to believe that the corporation owed him no debt or obligation. The evidence is convincing that McFarland was induced by these acts and this silence to entertain this belief, that Given intended that his acts and silence should have this effect, and that, in the absence of this belief, McFarland would never have paid or agreed to pay the sum of $19,000 for this stock. Here is every element of an equitable estoppel. McFarland has acted on the belief which Given intentionally induced him to form, and he cannot now be permitted to deny its correctness, and to mulct him in the sum of more than $8,000, because he relied on his acts and his silence.

The decree below is affirmed.