STUTSMAN v. OLINDA LAND CO. et al.

(District Court, S. D. California, S. D. February 5, 1916.)

No. A-113.

1. PUBLIC LANDS ⬤➡106(1)—DECISIONS OF LAND DEPARTMENT—COLLATERAL ATTACK.

Where land was public land of the United States and so subject to the jurisdiction of the Land Department at the time it was listed to a state under Rev. St. § 2449 (Comp. St. 1913, § 4870), as lieu land under a school land grant, the decision of the department that the land was nonmineral and of the character embraced in the grant, even if erroneous and voidable, is not void as against one who shows no connection with the land at the time it was so listed, and cannot be attacked by him.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 104, 301; Dec. Dig. ⬤➡106(1).]

2. PUBLIC LANDS ⬤➡53—LISTING—STATUTES—CONSTRUCTION—"VOID."

As against a collateral attack, the word "void," as used in Rev. St. § 2449 (Comp. St. 1913, § 4870), providing that the listing of lands to a state under a grant, which are not of the character embraced in the grant, shall be "perfectly null and void" is to be construed as "voidable."

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 143–145; Dec. Dig. ⬤➡53.

For other definitions, see Words and Phrases, First and Second Series, Void.]

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PUBLIC LANDS ⚖➝53—GRANT FOR SCHOOL PURPOSES—SELECTION OF LIEU LANDS.

Under Rev. St. § 2275 (Comp. St. 1913, § 4860), which authorizes a state to select lands of equal acreage to compensate deficiencies where sections 16 or 36, granted for school purposes, "are fractional in quantity, or where one or both are wanting by reason of the township being fractional or from any natural cause whatever," the validity of a lieu selection is not affected by the fact that when survey was made, it was found that the section, or part of section, which was made the base of the selection would have been in the ocean and not a part of the public lands; it not appearing that the section or township was not fractional.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 143–145; Dec. Dig. ⚖➝53.]

4. PUBLIC LANDS ⚖➝54(3)—OFFICERS OF LAND DEPARTMENT—PURCHASE OF SCHOOL LAND FROM STATE.

Rev. St. § 452 (Comp. St. 1913, § 698), which prohibits the "officers, clerks and employés in the General Land Office" from purchasing or becoming interested in the purchase of public lands under penalty of removal from office, if construed to apply to a surveyor general for a state does not render void a purchase by him of school lands from the state.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 154, 157; Dec. Dig. ⚖➝54(3).]

In Equity. Suit by W. A. Stutsman against the Olinda Land Company, the Columbia Oil Producing Company, and others. On motion to dismiss bill. Motion sustained.

Stutsman & Stutsman, of Los Angeles, Cal., for plaintiff.

Trippet, Chapman & Biby, of Los Angeles, Cal., for defendant Olinda Land Co.

Lewis W. Andrews and Thos. O. Toland, both of Los Angeles, Cal., for defendant Columbia Oil Producing Co.

BLEDSOE, District Judge. This is a suit brought by the assignee of the locators of a placer claim upon supposedly public lands to quiet the title thereto, cancel a patent issued by the state of California to defendants' grantor, and for an accounting for gas and petroleum extracted by defendants. The lands affected are very valuable oil properties situate in the Fullerton oil fields. Defendants have moved to dismiss.

Originally the land was a part of the public domain, and was in 1868 listed, and thereby conveyed, to the state of California, as land in lieu of a certain thirty-sixth section given to the state under general grant for school purposes. The acts of Congress specially providing for, or relating to, such grant and listing to the state are indicated in the margin.[1]

Without going into the details of the matters set out in the bill of complaint, it may be said that plaintiff, whose assignors made their entry, location, and discovery on the land in question in 1913, complains that the land in 1868, at the time of its listing to the state, was mineral land, and was known to be such by the applicant therefor and

[1] Act of March 3, 1853, c. 143, 10 Stats. at Large, 244; Act of Aug. 3, 1854, c. 201, 10 Stat. 346, § 2449, Rev. Stats. (Comp. St. 1913, § 4870); Act July 23, 1866, c. 219, 14 Stats. at Large, 218; Act Feb. 26, 1859, c. 58, 11 Stats. at Large, 385 (Comp. St. 1913, §§ 4860, 4861).

by the United States surveyor general for California, to whom the application for such listing was made; that in spite of such fact and such knowledge the application was received and approved by the said surveyor general, and the lands were thereafter by the Commissioner of the General Land Office listed to the state of California as lieu lands granted in lieu of a certain specified thirty-sixth section.

The principal contention in the case is that, as mineral lands were reserved from grant to the state, either as primary or as lieu lands, the listing and grant to the state of such mineral lands, known to be mineral at the time both by the applicant therefor and by the United States surveyor general for the state, constituted such a fraud on the government so gross and palpable as to render absolutely void the conveyance thus sought to be effectuated.

[1] The mere degree or aggravated nature of the fraud permeating such a transaction, however, would not serve to render such a conveyance void, when it would be otherwise only voidable. Confessedly the land in question belonged to the United States at the time of its listing as aforesaid, and the Land Department of the government in consequence had jurisdiction over it—jurisdiction to determine whether it was mineral or nonmineral, whether it should be listed to the state as lieu land or not. Having such jurisdiction, it had jurisdiction in making the necessary determination to render an erroneous and voidable judgment. Possessing jurisdiction of the subject-matter, its judgment, no matter how grossly steeped in fraud, was not void; it was merely voidable. Under the decision in Burke v. Southern Pacific Railroad Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527, it is not competent for plaintiff, who showed no connection with the land at the time of its listing in 1868, to complain of the error and fraud charged. As to him, the listing, being merely voidable, constitutes a conclusive adjudication, not open or susceptible to any sort of attack.

But plaintiff, recognizing the force of the Burke Case, contends that the judgment of the Land Department was absolutely void under the decisions in Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844, and Sherman v. Buick, 93 U. S. 209, 23 L. Ed. 849. An examination discloses, however, that the land in both those cases was not subject to the jurisdiction of the Land Department at the time of its attempted disposition thereby; it had already passed out of the government and was owned by private parties; the asserted jurisdiction to deal with it was wanting, and in consequence, that fact being shown, any judgment rendered in virtue thereof was absolutely without support and void. The case is essentially different, however, when a jurisdiction does exist and a judgment within the competency of the tribunal is rendered. In such an event, mere error, however gross, and fraud, howsoever induced, cannot suffice to convert the proceeding into an absolute nullity; the judgment is still an adjudication entitled to respect until set aside by direct attack in some manner recognized by the law. Noble v. Union River Logging Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123. Since the Burke Case, supra, discussion as to the right of one in plaintiff's situation to have such an adjudication set aside is completely foreclosed.

[2] Plaintiff claims that the listing and consequent conveyance to the state were "null and void and of no effect" as distinguished from merely "voidable," because of the language of the act of August 3, 1854 (section 2449, Rev. Stats.), supra, which in terms does provide that where lands embraced in lists similar to the one herein referred to are not of the character embraced by the act of Congress and are not intended to be granted thereby, "the lists, so far as these lands are concerned, shall be perfectly null and void and no right, title, claim, or interest shall be conveyed thereby." It is obvious, however, that, considering the conclusiveness of the adjudication of the Land Department within the limits of its competency as defined by the decisions of the Supreme Court of the United States, many of which are noticed in the Burke Case, supra, the word "void," as used in the statute just referred to, must, in a proceeding of this character at least, be construed as "voidable." That there is plenary authority and abundant reason to justify such construction is evidenced by the discussion and cases cited in 40 Cyc. 214 to 217.

[3] It is alleged in the bill, in addition to the matters already referred to, that the lands in question and applied for in 1868 as hereinabove mentioned, were not legally located or listed to the state as lieu lands, in that the base lands, to which the lands in question were applied for as lieu lands, and being a portion of a certain designated thirty-sixth section, though at the time unsurveyed, were actually in and under the Pacific Ocean, and, not being in place were not lands contemplated within the grant of Congress to the state of California, and in fact were not public lands at all, in consequence of all of which it is asserted that such ocean and nonpublic lands could not be the basis for any lieu selections, and could not, and did not, therefore afford justification for the listing to the state of the lands in controversy herein.

The statute providing for lieu land selections (Act Feb. 26, 1859, 11 Stats. at Large, 385) makes provision for the listing of lieu lands to the state in cases wherein the sixteenth or thirty-sixth sections have been pre-empted and also—

"to compensate deficiencies for school purposes where said sections 16 or 36 are fractional in quantity or where one or both are wanting, by reason of the township being fractional, or from any natural cause whatever."

There is no allegation that the township in which the base lands above referred to were situate was not fractional, and in view of the allegation that the portion of the thirty-sixth section referred to in the complaint was in the Pacific Ocean, it is perfectly apparent that the section was either fractional or was entirely wanting; consequently the township must have been fractional. In either event, ample justification for the listing of the land in controversy as lieu land would have existed. In addition, in this, as in the matters referred to hereinabove, as to plaintiff, the judgment of the Land Department as to the necessity for a lieu land selection must be held conclusive.

[4] Plaintiff also complains, somewhat in amplification and aggravation of his charge of fraud, that one Shanklin was the surveyor general for California in 1868 when the fraudulent and erroneous ap-

plication and listing were made, and that he continued to be such surveyor general for some time thereafter; that while acting as such there was conveyed to him by one Hancock who, as a deputy United States mineral surveyor, had made the survey of the lands in question, and who himself knew of their mineral character, all his (Hancock's) interest in and to the lands, and that thereafter, in 1882, while he was still holding the office of surveyor general, Shanklin received a patent to said lands from the state of California.

In so far as these facts merely serve to emphasize and aggravate Shanklin's fraud as hereinabove referred to, they do not suffice to change the legal situation confronting plaintiff. In this connection, however, plaintiff contends that, in virtue of section 452 of the Revised Statutes (Comp. St. 1913, § 698), the conveyance to Shanklin, he being at the time United States surveyor general for California, was ipso facto null and void. The section relied upon reads as follows:

"The officers, clerks and employés in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public lands; and any person who violates this section shall forthwith be removed from his office."

It is not clear that the section refers at all to the surveyor general for a state; there may be some doubt as to whether such officer is an employé "in the General Land Office." Passing that, however, neither that section, nor any other to which my attention has been called, purports to render void any purchase made under the interdicted circumstances. The only penalty prescribed is removal from office. The conveyance to Shanklin came from the state of California and not from the government, and the court should, I think, particularly as against third persons, be slow to adjudge such a conveyance absolutely void. Patents, either of state or federal origin, ought not to rest upon such an insecure basis.

The motions to dismiss are granted.