### LEE BLAKEMORE, Inc., et al. v. LEWELLING et al.

(Circuit Court of Appeals, Eighth Circuit. June 6, 1922.)

#### No. 5781.

1. Estoppel ⚖═52—One who by acts of negligence or by silence leads another to believe existence of facts estopped to deny them.

   One who by his acts or representations, or by his silence when he ought to speak out, intentionally induces another to believe certain facts to exist, and the latter, in ignorance of the fact that they do not exist, acts on such a belief, so that he will be substantially prejudiced if the former is permitted to deny the existence of such facts, is thereby estopped from interposing such a denial.

2. Insurance ⚖═390—Provisions in fire insurance policy, inserted for sole benefit of insurer, waived unless exercised.

   Provisions in a fire insurance policy declaring it void in certain contingencies, such as change in title, having been inserted for the sole benefit of the insurer, when those contingencies became actualities, the policy was not absolutely void, but only voidable at the option of the insurers, and, until they declared it void, they might, by act or deed, waive the forfeiture and continue the policy in force, in case the insurable interest in the property and the right to insurance thereunder were united and caused to exist in the same assured.

3. Insurance ⚖═393—Insurer held estopped to deny liability under fire insurance policy.

   Where purchasers of property at foreclosure sale applied for an assignment of a fire insurance policy issued thereon, and the insurer accepted deferred payment of the premium, and by its acts and correspondence led the purchasers to believe that an assignment of the policy had been made, which belief resulted in their failure to obtain other insurance, *held*, that insurer was estopped from denying liability under the policy.

4. Insurance ⚖═393—Assignment of policy by original insured with consent of insurer enforceable as new contract.

   Where the original owner of a policy of fire insurance had assigned it with the consent of insurer to another, who accepted the assignment, a new and independent contract arose between the insurer and the assignee, which was subject to no forfeiture by reason of the acts or omissions of the party originally insured, because by the consent of the insurer to the assignment it waived such forfeitures as against the assignee, who could enforce the new contract.

**5. Insurance ☞393—Valid insurance contract may be made by parol, followed by subsequent writings expressing them.**

Where the original owner of a fire insurance policy had assigned it with the consent of the insurer to another, who .accepted the assignment, a written policy signed by insurer ·was not indispensable to the creation of a new contract of insurance, as such contracts may be made by parol, to be followed by subsequent writings expressing them, and may take effect on the meeting of the minds of the parties.

**6. Insurance ☞371—Insurer held estopped through correspondence with insured's agent.**

As respects estoppel of insurer to claim forfeiture of policy against assignee of policy because of change of title, the fact that there was no contract between the insurer and such assigneee, and that the assignee did not sign any of the correspondence with insurer, and that none of the correspondence was addressed to such assignee by name, was immaterial, where it appeared that the original insured and assignor, in conducting the correspondence on which estoppel was predicated, acted as the agent of the assignee, and the insurer had notice of that fact.

**7. Appeal and error ☞1073(7)—Decree of recovery on fire policy held not prejudicial to insured.**

Where the property insured by a fire policy consisted of five different lots, each of which was declared in the policy to be insured in a specific amount, and the parties stipulated that the loss to the property was $24,900, and there was no stipulation or proof of the amount of the loss on either of the five lots, but the copy of the proof of loss in evidence showed that the specific amounts insured on the first, second, and third lots was $27,500, which was more than the amount recovered, a decree for the damage sustained by the insured *held* not prejudicial to the insurer.

**8. Insurance ☞672—Where contract made with and loss payable by attorney in fact for interinsurers, immaterial whether interinsurance body suable or not.**

Where each of the individuals, firms, and corporations that became an insurer by making a contract of interinsurance with a· designated attorney in fact for the other insurers remained such at the time when a loss occurred, and such attorney in fact had appeared and given bond to pay any decree rendered, whether the underwriters did or did not constitute a suable association, body, or entity was immaterial as respects the validity of decree in form against the underwriters.

**9. Insurance ☞672—Decree not invalid because not adjudging specific amount of proportionate share that each underwriter in interinsurance liable to pay.**

A decree fixing the recovery on an interinsurance fire insurance policy was not erroneous because it did not adjudge the specific amount of the principal and interest specified in the decree that each underwriter was liable to pay.

**10. Insurance ☞508—Insured under interinsurance plan held liable for loss in proportion of its premium to total premium.**

Where a provision in an agreement of interinsurance provided that there was assumed by each subscriber, including the assured, a sum which was the same proportion of the aggregate liability that each subscriber's premium deposit bore to the aggregate of all the subscribers' premium deposits under all policies in effect at the time of any loss, the insured was liable for that proportion of the loss that their premium paid bears to the aggregate of all the underwriters' premium deposits under all the policies in effect at the time of the loss.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Lee Blakemore, Incorporated, and others against P. J. Lewelling and others. From a decree for defendants, complainants appeal. Modified and affirmed.

This is an appeal by Lee Blakemore, Incorporated, and Herman L. Hettler Lumber Company, a corporation, from a decree of the court below to the effect that P. J. Lewelling and Vernon Price-Williams, partners as Lewelling & Price-Williams, recover upon a contract of insurance against loss by fire from Manufacturing Wood Workers' Underwriters and from Lee Blakemore, Incorporated, as attorney in fact for the said Underwriters, out of any moneys in his possession as such attorney in fact, $24,900, interest, and costs. This judgment is founded on an alleged contract of insurance made May 31, 1918, between Lee Blakemore, Incorporated, attorney in fact for the Underwriters, and Lewelling & Price-Williams, to the effect that the latter should be and were thenceforth insured against loss by fire to the same property on the same terms and to the same effect as the Allen Lumber & Box Company, a corporation, was stated to be insured on April 23, 1918, by a policy issued and delivered to the Box Company by the Underwriters by Blakemore, their attorney in fact, on that day.

That policy provided that Manufacturing Wood Workers' Underwriters, "in consideration of the stipulations herein named and of the deposit of $803.75 premium does insure Allen Lumber & Box Company for the term of one year from the 23d day of April, 1918," to an amount not exceeding $35,000, against loss or damage by fire to certain property therein described, which the Box Company was using as lessee; that the Manufacturing Wood Workers' Underwriters, also called subscribers, are "individuals, firms, and corporations that have executed an agreement (hereby made a part hereof) which vests in Lee Blakemore, Incorporated, of Chicago, Illinois, herein called the 'attorney in fact,' the power to underwrite and issue this policy for them. It is understood and agreed that there is assumed by each subscriber, including the assured hereunder, as if a separate policy was issued therefor, a sum which is the same proportion of the aggregate liability hereunder that each subscriber's premium deposit bears to the aggregate of all the subscriber's premium deposits under all policies in effect at the time of any loss"; that the word "policy" means this contract which is issued to the subscribers in exchange for and in consideration of indemnity extended to such subscriber by those underwriting the risk here insured; that the word "premium" means the sum of money (in this case, $803.75) the subscriber agrees to deposit with the attorney in fact for the purpose of carrying out the plan of indemnity; that in the event of litigation no suit or other proceedings at law or in equity shall be begun or maintained against more than one of the underwriters at any time for the recovery of any claim upon and by virtue of the policy; and that a final decree in such suit or other proceedings shall be taken to be decisive of the similar claim against each of the underwriters hereon, absolutely fixing his liability on the premises so far as he individually is concerned to the same effect as if he had been sole defendant in a similar suit or proceeding as to the similar claim against him.

By the agreement referred to in and made a part of the policy, each underwriter, by a separate power of attorney contained in the agreement, constituted and appointed Lee Blakemore, Incorporated, his, their, or its attorney in fact, "to exchange with other subscribers indemnity against loss or damage by fire or lightning, and to that end to subscribe and deliver all necessary contracts whereby we shall be bound to so exchange indemnity against loss or damage by fire or lightning; and to change, modify or cancel such contract or contracts of indemnity and to reinsure same; * * * to appear for us in any suit, action, or legal proceedings * * * that may arise out of any such contract; and to do or perform every other or different act that we ourselves could do in relation to any such contract for the interchange of indemnity against loss or damage by fire or lightning." Each subscriber also specified in that agreement that the underwriters should have no joint funds, capital, or stock, that business should not be conducted by them jointly, nor should they have power to bind each other, but that each should act separately, and not one for another. The agreement provided that any sub-

scriber might cancel it including the power of attorney therein on 10 days' notice to the attorney, that the unexpired indemnity should be canceled within 10 days, that the subscriber's accounts should be speedily liquidated, and that any funds to his credit including his reserve fund should be returned to him. The policy contained a similar provision to the effect that if it should be canceled or become void or cease the balance of the premium and deposit above actual costs of the insurance at the customary rate for the short time it was in force should be returned to the insurer.

From the provisions of the policies and the power of attorney which have been recited, the fact clearly appears that they constituted contracts of interinsurance whereby each of the underwriters agreed to indemnify each of his, their, or its associate underwriters against loss by fire or lightning, and each of his, their, or its associate underwriters agreed to indemnify him to the respective amounts specified in the policies against loss by fire or lightning, and that Lee Blakemore, Incorporated, was authorized by each of them to make for each of them contracts of insurance or indemnity, to issue policies of insurance, to modify such contracts or policies, and that this attorney in fact was also authorized by each of them to bring and defend suits and legal proceedings of all kinds, and to compromise and settle claims arising out of such contracts of insurance.

When, on April 23, 1918, Lee Blakemore, Incorporated, issued to the Box Company for the underwriters their policy of insurance of that date, it received from that company one of the agreements containing the power of attorney which has been described, but the $803.75 premium deposit specified therein was not then or ever paid until the alleged contract of insurance with Lewelling & Price-Williams was made on May 31, 1918. The policy to the Box Company described the property insured and stated that it was "owned or leased by the assured, the Box Company, while situate on premises of the Graysonia-Nashville Lumber Company and the loss if any was made payable to the Graysonia-Nashville Lumber Company, Alvin D. Goldman, trustee, as their interests may appear." In a suit by the mortgagee against the lessor of the Box Company, to which the Box Company was a party, a decree of sale and foreclosure had been rendered in March, 1917. On April 29, 1918, 6 days after the Box Company policy was issued, there was a sale of the insured property under this foreclosure decree to Lewelling & Price-Williams. That sale was confirmed by order of the court on May 21, 1918. The policy provided that it should be void if the interest of the assured was other than the sole ownership of the insured property, if that interest was not truly stated, if, with the knowledge of the insured, foreclosure proceedings were commenced or notice given of sale of any of the insured property, and if any change other than by the death of the insured should take place in the interest, title, or possession the subject of the insurance. The Box Company gave no notice to the underwriters or to Lee Blakemore, Incorporated, of the foreclosure proceedings, sale, and confirmation of the sale, until after May 21, 1918, and appellants' counsel claim that the policy to the Box Company became void by reason of the provisions which have just been recited as early as May 22, 1918.

This policy was No. 7431. On May 28, 1918, 7 days after the confirmation of the sale, the Box Company and Lewelling & Price-Williams, who were the purchasers at the foreclosure sale, met and agreed with each other that the indemnity insurance held by the Box Company under the policy, should be assigned and transferred to Lewelling & Price-Williams, and thereupon the Box Company by agreement and authority of Lewelling & Price-Williams, sent this telegram addressed to the underwriters: "Lewelling & Price-Williams of Little Rock have acquired the Graysonia-Nashville Lumber Company property. Please make our insurance policies over to them with the standard mortgage clause to Alvin D. Goldman, trustee, for Lesser-Goldman Cotton Company. Please confirm. Allen Lumber & Box Company." On May 31, 1918, the following answer was sent to this telegram by a clerk in the office of Blakemore, Incorporated, and was received by the Box Company: "Allen Lumber & Box Company, Nashville, Arkansas. Assigning our Policy 7431 to Lewelling & Price-Williams with mortgage clause as per your wire. Manufacturing Wood Workers' Underwriters."

This was followed by a letter to the Box Company, signed "Lee Blakemore,. Incorporated, T. E. Larsen." This Larsen was the business manager or superintendent of Blakemore, Incorporated, in its office in Chicago. So far as material, this letter reads in this way: "Gentlemen: Upon receipt of your telegraphic advice of the 29th ult., we wired you on May 31 as follows: 'Assigning our policy 7431 to Lewelling & Price-Williams with mortgage clause as per your wire.' We are assuming that you will continute to operate the property and accordingly will effect assignment as per your instructions. If our understanding is incorrect we would very much appreciate your advising us." On June 4, 1918, the Box Company replied by a letter of that date received by Blakemore, Incorporated, "Your wire of May 31st and your confirmation letter of June 1st received. We wish to advise that we will continue to operate the property as you mention." On July 2, 1918, Blakemore, Incorporated, sent two copies of a blank assignment, wrote the Box Company to have them signed, that "inasmuch as the interests of the Allen Lumber & Box Company have been assigned to Lewelling & Price-Williams, it will be necessary to secure a new 'agreement' in connection with this proposition," sent two copies of the new agreement, requested that these copies be signed by an officer of Lewelling & Price-Williams, "regretting exceedingly our delay in this instance." The two blank assignments thus sent forward in this letter bore this indorsement: "Consent by Company to Assignment of Interest. The Manufacturing Wood Workers' Underwriters of Chicago, Illinois, hereby consents that the interest of the Allen Lumber & Box Company as assured under this policy be assigned to Lewelling & Price-Williams, of Little Rock, Arkansas. Lee Blakemore, Incorporated, [Signed] Lee Blakemore, Pres't., Attorney in Fact for the Underwriters. Dated May 31, 1918."

Prior to May 31, 1918, when the telegram of the Underwriters that they were assigning the policy No. 7431 to Lewelling & Price-Williams with mortgage clause as per wire was received, the premium deposit recited in that policy of $803.75 had not been paid. But on receipt of that telegram the Box Company sent its check for that amount, for which Lewelling & Price-Williams, to whom it was indebted, pursuant to an agreement of that date, gave it credit, to Blakemore, Incorporated, which collected it on June 3, 1918, and retained the proceeds of that collection. On July 3, 1918, before the letter of July 2, 1918, and its contents reached the Box Company, the insured property was destroyed by fire.

The litigation which has resulted in the decree below was commenced by the filing of a bill in equity by Lee Blakemore, Incorporated, against the members of the partnership of Lewelling & Price-Williams to avoid the policy and contract of insurance the latter claimed, and that, if such relief should not be granted by the court, the court should nevertheless adjudge the equities of the parties, the liability of the underwriters, and the course which Blakemore, Incorporated, the attorney in fact, should pursue with reference to such liability and the disposition of moneys in its possession. Subsequently Lewelling & Price-Williams proposed to file a cross-bill, and thereupon the parties entered into a stipulation to the effect (a) that Blakemore, Incorporated, should give and it did give a bond with surety in the sum of $30,000 to pay any amount that should be adjudged owing by Blakemore, Incorporated, or any of the underwriters, to Lewelling & Price-Williams; (b) that Blakemore, Incorporated, admitted that the loss by fire of July 3, 1918, was $24,900; (c) that Blakemore, Incorporated, would and it did cause its appearance and the appearance of one of the Underwriters or subscribers to be entered to any cross-bill which Lewelling & Price-Williams' should file. Thereupon Blakemore, Incorporated, and Herman H. Hettler Lumber Company, a corporation, one of the underwriters, filed a substituted complaint for the same relief sought in the original complaint of Blakemore, Incorporated. Lewelling & Price-Williams, the other parties to whom the loss was payable as their interests might appear under the telegrams which have been recited, appeared and filed a cross-bill against the Manufacturing Wood Workers' Underwriters and Blakemore, Incorporated. The defendants to the bill and cross-bill answered them, with the exception of Manufacturing Wood Workers' Underwriters, which was sued in the cross-bill as an unincorporated association, and a subpœna to answer was served on the insurance commissioner of Ar-

kansas as service upon it, but this alleged unincorporated association did not appear or answer, and it has not appealed from the decree below.

John M. Zane, of Chicago, Ill. (Zane, Morse & Marshall, of Chicago, Ill., on the brief), for appellants.

Allen Hughes, of Memphis, Tenn. (S. H. Mann, of Forrest City, Ark., on the brief), for appellees.

Before SANBORN and HOOK, Circuit Judges, and NEBLETT, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). It has seemed necessary to a clear understanding of this case that many facts concerning it should be stated, and that the acts and writings of the parties and the course of the litigation should be portrayed, and this has been done in the foregoing statement.

This is not an action at law. It is a suit in equity. Lee Blakemore, Incorporated, the attorney in fact of each of the underwriters, first invoked the action of the court of equity below to relieve it and the underwriters from payment of the loss which Lewelling & Price-Williams sustained by the burning of the property described in the policy to the Box Company, on the ground that the defendants in that bill never made any insurance agreement with the underwriters or with Blakemore, Incorporated, and never were insured; and Blakemore, Incorporated, prayed that the policy to the Box Company and the insurance under it, which Lewelling & Price-Williams claimed, should be adjudged null and void and canceled. Subsequently Blakemore, Incorporated, and the Hettler Lumber Company, a corporation, and one of the underwriters, with leave of the court, filed a substituted complaint for the same relief on the same ground, and Lewelling & Price-Williams answered that complaint and filed a cross-bill under which they claimed and still claim that they were induced by the acts and statements of Blakemore, Incorporated, to believe that they were insured and to deposit $803.75 for such insurance by the underwriters against loss on the same property and on the same terms as the Box Company would have been insured if there had been no change of title or violation of any term of the policy issued to that company before May 31, 1918, when Blakemore, Incorporated, for the underwriters telegraphed that they were assigning the policy to Lewelling & Price-Williams. They also claimed that there was a meeting of minds and agreement of insurance of the nature just stated between Blakemore, Incorporated, attorney in fact for the underwriters, and Lewelling & Price-Williams, on May 31, 1918, when the telegram of that day was received and the Box Company's check for the $803.75, the premium deposit, was sent to Blakemore, Incorporated, a check which it received and collected.

The facts in support of the first claim of Lewelling & Price-Williams are not without persuasive force. They undoubtedly satisfied the court below that under them the equity of Lewelling & Price-Williams was superior to that of Lee Blakemore, Incorporated, attorney in fact for the underwriters, and to that of any of the underwriters.

Counsel for the appellants earnestly contend that the decree below should be reversed because Lewelling & Price-Williams never sub-

scribed to the prescribed written agreement and the power of attorney therein. But, in the opinion of the court, it was not indispensable to the creation of an equity superior to that of the appellants, nor to the creation of a contract of insurance, that they should subscribe to this formal power of attorney.

[1] No principle of equity rests on a more solid foundation than that one who, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter, in ignorance of the fact that they do not exist, acts on such a belief so that he will be substantially prejudiced if the former is permitted to deny the existence of such facts, is thereby in equity estopped from interposing such a denial. Independent School District v. Rew, 111 Fed. 1, 6, 49 C. C. A. 198, 55 L. R. A. 364; Given v. Times-Republican Printing Co. et al., 114 Fed. 92, 52 C. C. A. 40; Paxson et al. v. Brown et al., 61 Fed. 874, 881, 10 C. C. A. 135.

[2] Counsel argue that after May 21, 1918, when the foreclosure sale of the insured property was confirmed, the policy issued to the Box Company had become absolutely void by its terms, and that thereafter the insurance under it was not assignable. The provisions of the policy declaring it void in certain contingencies, however, had been inserted in that policy for the sole benefit of the insurer, and although those contingencies had become actualities it seems that the policy was not absolutely void, but that it was only voidable at the option of the insurers, and that, until they exercised the option to declare it void, they might, by act or deed, waive the forfeiture which they had the power to enforce, and continue the policy in force in case the insurable interest in the property and the right to the insurance thereunder were united and caused to exist in the same assured. Westerlund et al. v. Black Bear Mining Co. et al., 203 Fed. 599, 611, 612, 121 C. C. A. 627; United States v. N. Y. & Porto Rico Steamship Co., 239 U. S. 88, 93, 36 Sup. Ct. 41, 60 L. Ed. 161; Stutsman v. Olinda Land Co. (D. C.) 231 Fed. 525, 528; Pollock on Contracts, 9; Toy Toy v. Hopkins, United States Marshal, 212 U. S. 542, 548, 29 Sup. Ct. 416, 53 L. Ed. 644.

[3] However that may be, and even if, after May 21, 1918, the Box Company's policy was void, so that it had no insurance against loss by fire upon the property described in it, nevertheless the telegrams, letters, and acts of Blakemore, Incorporated, which, as the foregoing statement shows, had plenary authority to make and deliver contracts of insurance, to change, modify, or cancel them, to make representations concerning them, and to do other and different acts regarding them, which each underwriter might do for itself, were well calculated to lead Lewelling & Price-Williams to believe and undoubtedly did lead them to believe that they were insured against loss by fire to the property described in the policy to the Box Company ever after May 31, 1918, and in reliance upon those representations to fail to procure other insurance upon that property. On May 28, 1918, the Box Company and Lewelling & Price-Williams agreed that the policy and insurance the former had had on the property the latter had purchased should

be assigned to the former, and that the Box Company for both parties should telegraph to the Underwriters for their consent to the transfer, and the Box Company did so. On May 31, 1918, the Underwriters, through Blakemore, Incorporated, answered that they were assigning the Box Company policy to Lewelling & Price-Williams and changing the payees in the mortgage clause, as requested by the telegram of the 28th. Thereupon the Box Company on that day sent its check for the premium deposit $803.75 on the policy, which had never been paid, to Blakemore, Incorporated, Lewelling & Price-Williams credited the Box Company with that amount on a debt the Box Company was owing them, and Blakemore, Incorporated, collected the check on June 3, 1918, and retained the proceeds. On June 1, 1918, Blakemore, Incorporated, wrote the Box Company that they were assuming that the Box Company would operate the property, that they would effect the assignment as requested and would appreciate notice of the fact if their understanding was incorrect, and on June 4, 1918, the Box Company advised it that it would continue to operate the property. Blakemore, Incorporated, could have received and kept the $803.75 for nothing, but to secure or pay for the indemnity, the insurance of Lewelling & Price-Williams against loss on the property from fire. These acts, telegrams, and letters leave no substantial doubt that they led Lewelling & Price-Williams to believe that they were insured and to fail to secure insurance elsewhere, for such a belief was the natural and almost inevitable effect of them. Nor is there much doubt that Blakemore, Incorporated, intended that they should have that effect, for it indorsed on the blank assignments which it mailed to the Box Company on July 2, 1918, too late to reach it before the fire, its signed consent to the assignment of the policy, dated May 31, 1918, the day it telegraphed it was assigning the policy and changing the payees in the mortgage clause. There would be neither equity nor justice in permitting the underwriters and Blakemore, Incorporated, to deny the existence of this indemnity or insurance, which their acts and writings so clearly indicated, and so surely lulled Lewelling & Price-Williams into security and prevented them from obtaining other insurance.

[4] The argument of counsel to the effect that the policy was void on account of the forfeiture resulting from the foreclosure and sale of the property insured, and that therefore neither it nor any insurance under it could be assigned, may be sound to the extent that the owners of the policy could not alone assign any insurance under it, so as to bind the insurers to the assignee; but when the original owner of a policy has assigned it with the consent of the insurer to another, who accepts the assignment, a new and independent contract arises between the insurer and the assignee, which is subject to no forfeiture by reason of the acts or omissions of the party originally insured because by the consent of the insurer to the assignment it has waived such forfeitures as against the assignee, and the latter has and may enforce the new contract. Ellis v. Insurance Co. of North America (C. C.) 32 Fed. 646, 649; 2 May on Insurance, 278A; 4 Joyce on Insurance, § 2308; 14 Ruling Case Law, 107.

[5] Nor is the court convinced that a written agreement or power of attorney, signed by Lewelling & Price-Williams, or a written policy signed by Blakemore, Incorporated, was indispensable to the creation of this new contract of insurance by agreement between the Box Company and Lewelling & Price-Williams and the consent of Blakemore, Incorporated, attorney in fact for the underwriters.   Such contracts may be made by parol, to be followed by subsequent writings expressing them, and may take effect upon the meeting of the minds of the parties, as it seems to us the minds of the parties in this case did meet on May 31, 1918.   Relief Fire Insurance Co. v. Shaw, 94 U. S. 574, 576, 577, 578, 579, 24 L. Ed. 291; Eames v. Home Insurance Co., 94 U. S. 621, 627, 629, 630, 24 L. Ed. 298; Insurance Co. v. Colt, 20 Wall. (87 U. S.) 560, 567, 568, 22 L. Ed. 423.

[6] The contention has not been overlooked that there was no contract between the underwriters and Blakemore, Incorporated, on the one hand, and Lewelling & Price-Williams on the other, and no estoppel in favor of the latter, because Lewelling & Price-Williams did not sign any of the telegrams or letters, nor were any of the letters or telegrams sent to them by name.   But the evidence convinces that the Box Company was the agent of Lewelling & Price-Williams to procure for them the new contract of insurance for their benefit throughout the transaction, and that the Underwriters and Blakemore, Incorporated, had ample notice of that fact.   The result is that there was no error or mistake in the conclusion of the court below that in equity and good conscience Lewelling & Price-Williams were entitled to recover from the Underwriters and their attorney in fact for the loss they sustained by the burning of the property in controversy.

[7] Another claim of counsel for the insurers is that there can be no decree for the damage sustained by Lewelling & Price-Williams because the property insured consisted of five different lots, each of which was declared in the policy to be insured in a specific amount, and while the parties stipulated that the loss to the property was $24,900 there was no stipulation or proof of the amount of loss upon either of the five lots.   But a copy of the proof of loss was in evidence, from which it appears that the specific amounts insured on the first, second, and third lots was $27,500, which was more than the $24,900 recovered, and that nothing was claimed on the other two lots.   Moreover, no objection of this nature appears to have been made at the hearing, and there is no doubt that no error or mistake in the amount of the decree prejudicial to the Underwriters or Blakemore, Incorporated, arose in this state of the evidence.

[8] Another position of counsel for the insurers is that the portion of the decree which grants a recovery of $24,900 and interest from the Manufacturing Wood Workers' Underwriters, is unauthorized and erroneous, because there was and is no such body entity or association suable or subject to the jurisdiction of the court below. It has not been found necessary to discuss or decide the question here suggested in order to determine whether or not Lewelling & Price-Williams shall be paid their loss under this decree, and as the question is claimed to involve the issue whether or not a suit or judgment against such body

or association is violative of the Constitution of the United States, we do not consider it or express any opinion upon it. Whether there is or is not such a suable body or association or entity subject to the jurisdiction of the court below or of this court, each of the individuals, firms, and corporations that became an insurer by making a contract of interinsurance with Blakemore, Incorporated, as attorney in fact for the other insurers, and that remained such at the time when the loss in controversy occurred, was and is by the express terms of the agreement of insurance liable to pay the same proportion of the loss of Lewelling & Price-Williams that his, their, or its premium deposit bore to the aggregate of all the interinsurers' premium deposits under all the contracts of interinsurance in effect at the time of the loss, and each of these interinsurers was one of the Manufacturing Wood Workers' Underwriters, and all of them were the Manufacturing Wood Workers' Underwriters at that time. One of these underwriters, the Hettler Lumber Company, and the attorney in fact of each of them appeared, pleaded, contested, and tried the question of the liability of each of them for this loss, the court necessarily adjudged that the Hettler Lumber Company was liable for its proportion of the loss in reaching its conclusion and decree that Lewelling & Price-Williams should recover from Lee Blakemore, Incorporated, as attorney in fact for the Underwriters, and out of any moneys in its possession as such attorney in fact, the $24,900 interest and costs. Each claim of each of the other underwriters than the Hettler Lumber Company, that he, they, or it is not liable for this loss, is by the express terms of the agreement of insurance adjudged by the adjudication of the claim of the Hettler Lumber Company "as if it had been sole defendant in a similar suit or proceedings as to the similar claim against him." So it is that the decree below adjudges each underwriter liable for its proportionate share of the loss, and decrees that Blakemore, Incorporated, shall pay the adjudged amount of that loss out of the moneys in his possession as attorney in fact. Blakemore, the president of the attorney in fact, testified "We have more than sufficient funds to meet these risks." Blakemore, Incorporated, pleaded in its answer to the cross-complaint that it had come into the court below and pleaded, and it proved in that court, that it had filed a bond with a sufficient surety in the amount of $30,000 to assure the payment of any money decreed that should be rendered in this litigation. Therefore the decree below is secured to be and will be paid by Lee Blakemore as attorney in fact, and the Manufacturing Wood Workers' Underwriters, whether it is or is not a suable association, body, or entity, will be discharged from all liability by the payment of the amounts specified in the decree by the attorney in fact out of the moneys in its possession, and the issue whether or not it is such an association, body, or entity is immaterial in this case.

[9] It is suggested that the decree is erroneous because it does not adjudge the specific amount—that is, the proportionate share—of the principal and interest specified in the decree that each underwriter is liable to pay. But that is certain which may be made certain, and those amounts may be readily determined by computation, and it was unnecessary to state them in the decree. The court is confident that the

amount adjudged by the decree will be speedily paid. If it should not be, this is a suit in equity, and the court below will have ample power subsequently to determine, if necessary, the specific amounts due from each underwriter, and to enforce their payment.

[10] Attention is called by counsel to this provision of the agreement of insurance found in the policy:

"It is understood and agreed that there is assumed by each subscriber, including the assured hereunder, as if a separate policy was issued therefor, a sum which is the same proportion of the aggregate liability hereunder that each subscriber's premium deposit bears to the aggregate of all the subscribers' premium deposits under all policies in effect at the time of any loss."

They complain that under this clause, whereby each subscriber, including the assured, assures his proportion of the loss, the amount specified in the decree should be diminished by the proportion of their loss which Lewelling & Price-Williams assumed. The contract so reads, and the decree should be modified by reducing the amount of the principal and interest specified therein by the proportion thereof that their premium deposit of $803.75 bears to the aggregate of all the underwriters' premium deposits under all the policies in effect at the time of the loss.

There are other alleged errors and mistakes discussed. All of them have received deliberate consideration, but none of them has been found to be material and prejudicial to the appellants.

Let this case, therefore, be remanded to the court below, with directions to modify its decree by reducing the amount of the principal and interest specified therein by the proportion thereof that the premium deposit $803.75 of Lewelling & Price-Williams bears to the aggregate of all the underwriters' premium deposits under all the policies in effect at the time of the loss of Lewelling & Price-Williams, and let the decree, so modified, be and it is affirmed, without costs in this court against any of the parties.

HOOK, Circuit Judge, participated in the hearing and conference and concurred in the decision of this case, but died before the opinion was prepared.