## DUSTIN GRAIN CO. v. McALLISTER.

(Circuit Court of Appeals, Eighth Circuit. February 18, 1924.)

No. 6160.

1. **Trial ⬤139(1)—Verdict directed, where no substantial opposing evidence.**

   When at the close of the evidence, there is no substantial evidence to sustain a finding or verdict for defendant on a decisive issue in the case, the trial court should instruct the jury to find that issue for the plaintiff.

2. **Trial ⬤139(1)—Whether there is substantial evidence preliminary question for court before submission to jury.**

   At the close of the evidence in a trial before a jury, there is always a preliminary question for the judge before any case can be submitted to the jury, and it is not whether or not there is any evidence, but whether or not there is any substantial evidence, on which a jury may properly render a verdict for one of the parties to the action.

3. **Sales ⬤182(1)—Held that court should have directed verdict for plaintiff in action for damages.**

   In action for damages for breach of contract to ship corn, where the defense was that plaintiff breached the contract by drawing back on shipper, because corn shipped was not according to contract, evidence of defendant that the corn was according to contract *held* not sufficiently substantial to warrant the submission of the issue to the jury, and the court should have directed a verdict for the plaintiff.

4. **Sales ⬤176(1)—Seller held to have estopped himself to claim breach by buyer.**

   Where 20 carloads of corn were sold under an agreement that, if the corn did not come up to grade, buyer could draw back on shipper, and buyer telegraphed seller that certain shipment was not up to grade, and asked if it might draw back, and seller assented and paid the draft, seller thereby waived and estopped himself from claiming that buyer breached the contract by not accepting the corn shipped; it appearing that buyer continued selling corn in reliance on delivery to it by the seller of the remainder of the corn.

5. **Estoppel ⬤83(1), 95—One who, by representations or by silence, induces another to believe certain facts to exist, estopped to interpose denial.**

   One who, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter rightfully acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial.

In Error to the District Court of the United States for the Western District of Arkansas; Frank C. Youmans, Judge.

Action by the Dustin Grain Company against J. M. McAllister. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions to grant new trial.

Campbell & Campbell, of Wichita, Kan., Embry, Johnson & Tolbert, of Oklahoma City, Okl., and Clinton R. Barry, of Ft. Smith, Ark., for plaintiff in error.

Before SANBORN and KENYON, Circuit Judges, and MUNGER, District Judge.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SANBORN, Circuit Judge.   On November 8, 1917, J. M. McAllister made a written contract with the Dustin Grain Company, a corporation, to sell and to deliver to the latter's order, on or before November 18, 1917, 20 cars of No. 3, or better, dry white or mixed corn to be billed to the Dustin Grain Company at Fort Worth, Tex.   The contract provided that the purchase price of the corn should be $1.35 for the white and $1.30 for the mixed corn per bushel, that McAllister should make drafts on the Dustin Grain Company with bills of lading attached for the cars of corn as they were respectively shipped, and that the Dustin Grain Company should draw back on McAllister, if any of the corn misgraded.   McAllister shipped two cars of corn under the contract, and refused to ship any more.   Thereupon the Dustin Grain Company sued him for $3,260.29, its alleged loss of the profits it would have made, if the defendant had performed his contract. The defendant admitted the contract, and pleaded in defense that the plaintiff refused to receive some of the corn which he shipped to it under the contract, and in that way committed the first breach of it, and thereby relieved him from liability to ship any more corn.   The case was tried by a jury, which returned a verdict for the defendant, and the decisive question in this case is presented by the refusal of the trial court to instruct the jury, as requested by the plaintiff, that the defendant had shown no facts or circumstances that justified him in refusing to deliver the 18 carloads of corn which he agreed, but refused, to deliver.   The only ground on which the defendant claimed that he was justified in his refusal to ship the 18 cars of corn was that the plaintiff committed the first breach of the contract, and released him therefrom by its refusal to accept under the contract car No. M. P. 36379, one of the two cars which the defendant shipped, upon the ground that the corn therein was so hot and wet on its arrival at Fort Worth, its place of delivery, that it fell below grade No. 3, and thereby misgraded, when, as the defendant claimed, such corn was in fact dry and up to grade No. 3 specified in the contract.   Whether or not this corn was hot, wet, and below grade, when it reached its place of delivery at Fort Worth, was the only issue upon which there was any conflict in the evidence, and but one witness testified that it was not hot, wet, and below grade.

At the close of the evidence the following facts were admitted or proved without any conflict in the evidence:   On November 9, 1917, the defendant at Gravette, Ark., shipped this car of corn to Fort Worth, Tex., and on the same day drew his draft for the contract price thereof, $752.64, on the plaintiff at Oklahoma City.   That draft was paid by the plaintiff before the car arrived at Fort Worth.   The contract provided that "buyer will draw back on shipper if corn misgrades."   Wet and hot corn was below the contract grade.   On November 14 or 15, 1917, the plaintiff at Oklahoma City was informed that the corn in this car at Fort Worth was wet and hot, and it telegraphed the defendant that this car inspected wet and hot, that the plaintiff could not use it, and asked if it should draw back.   On November 17, 1917, the defendant answered, among other things, "Draw back on me for car 36379 Missouri Pacific, and send bill of lading

to A. F. Hardie and Son, Dallas, Tex." After one or two telegrams the plaintiff drew back pursuant to this direction and the defendant paid the draft. Upon the issue whether or not the corn was hot and wet, this was the evidence:

The plaintiff notified the defendant that it was hot and wet, and asked if it should draw back. The defendant directed it to do so. It did so, and the plaintiff paid the draft. J. E. Robinson was the chief grain inspector of the Fort Worth Corn & Cotton Exchange at Fort Worth. He testified that his duty was to inspect grain at the request of any interested party to determine its condition, that on November 15, 1917, he inspected the corn in car M. P. 36379 "and found same to be snap mix corn hot and wet." Mr. Cadwallader, a witness for the plaintiff, testified that on November 19, 1917, he inspected the corn which was then in this car, and found that it was hot and wet. The only evidence tending to conflict with the testimony of these two witnesses is the testimony of Mr. Hardie, for the defendant, that about the 16th of November, 1917, at Fort Worth, he inspected corn that he found in a M., K. & T. car, and found it to be "a splendid car of corn absolutely dry," and that it was of grade No. 2. He testified that he thought that car of corn was shipped to the Dustin Grain Company, that he did not know whether it was a car of corn that had been rejected or turned down by the Dustin Grain Company, that the number of the car was M. P. 36379, that the corn was not in this car when he inspected it, and that it was originally shipped in that car. Asked how he knew it was, he answered, "Because I went to the railroad company and asked them for that car, and they looked on their freight bill and said it had been transferred to the M., K. & T. car." Asked if he knew of his own knowledge that the car he saw was in fact car M. J. 36379, he replied, "No, sir."

[1] Because the testimony of this witness to the identity of the corn he examined with that which the defendant shipped to the plaintiff in car M. P. 36379 rests entirely upon hearsay of hearsay, upon the oral hearsay of those in the office of the railroad company that the written hearsay on some freight bill indicated the corn once in car M. P. 36379 had been transferred to the M., K. & T. car, because the record contains no evidence tending to show to what M., K. & T. car that hearsay indicated the corn had been transferred, and because the character and condition of the corn he examined in the M., K. & T. car was so radically different from that which the inspector and Cadwallader inspected in car M. P. 36379, the testimony of this witness in our opinion failed to rise to the dignity of substantial evidence of the identity of the corn he examined with the corn shipped in car M. P. 36379. And when, at the close of the evidence, there is no substantial evidence to sustain a finding or verdict for the defendant upon a decisive issue in a case, the trial court should instruct the jury to find that issue for the plaintiff.

[2, 3] If the identity of the corn Hardie examined in the M., K. & T. car with the corn the inspector and Cadwallader examined in car M. P. 36379 was decisive of the merits of this case, as the court below evidently considered it, and there was no substantial evidence

of that identity, it should have given the instruction requested by the plaintiff. At the close of the evidence in a trial before a jury there is always a preliminary question for the judge before any case can be submitted to the jury, and it is not whether or not there is any evidence, but whether or not there is any substantial evidence, upon which a jury may properly render a verdict for one of the parties to the action. If there is no such substantial evidence, it is the duty of the court to direct the jury to return a verdict against him. So. Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Patton v. Tex. & Pacific R. R. Co., 179 U. S. 658, 660, 21 Sup. Ct. 275, 45 L. Ed. 361; Chicago Great Western R. R. Co. v. Roddy, 131 Fed. 712, 713, 65 C. C. A. 470; Western Union Telegraph Co. v. Baker, 140 Fed. 315, 319, 72 C. C. A. 87.

[4] There is another reason why the instruction requested should have been given, and that is that the defendant by his telegrams, letters, acts, and silence waived and estopped himself from enforcing the claim he now makes that he was released from his liability to deliver the 18 cars of corn by the plaintiff's refusal to accept the corn in car M. P. 36379. The object and effect of the provision in the contract—"Buyer will draw back on shipper if corn misgrades"—was to compel the presentation, consideration, and settlement of all claims arising out of alleged misgrading immediately after the corn arrived at destination, while it was still accessible to the parties, their inspectors, and witnesses. To accomplish this object and secure this effect the plaintiff on November 14 or 15, 1917, caused the corn in car M. P. 36379 to be inspected by the chief grain inspector at Fort Worth, who reported it wet, hot, and below the contract grade. To that end the plaintiff telegraphed to the defendant that the corn inspected wet and hot, and asked him if it should draw back for it. This telegram presented to the defendant the opportunity to investigate the condition of the corn and required him thereupon to exercise his option to insist that the corn complied with the contract and must be accepted thereunder, and that, if it was not so accepted, he would not deliver more corn under the contract, or to admit the plaintiff's claim that the corn misgraded, that the plaintiff might draw back for it, and that he would remain bound by the contract, notwithstanding the plaintiff's refusal to accept the car under the contract. On November 17, 1917, the defendant telegraphed the plaintiff to draw back on him for the car, and to send the bill of lading to A. F. Hardie & Son, Dallas, Tex.; that they had looked at the corn and had said it was sound, but that if the plaintiff could handle the car at a discount of 10 cents per bushel to draw back for that amount, but that if it was unwilling to do that to draw back for the full amount and send the bill of lading to Hardie & Son. The plaintiff declined to take the car at the discount, drew back for the full amount he had paid for it, and its draft was paid. The defendant gave no notice to the plaintiff and made no claim during this transaction relating to this car that, if the plaintiff did not accept it under the contract, he would insist that the failure so to do constituted a breach of the contract and released him therefrom. On the other hand, on November 19, 1917, he wrote the plaintiff, "Will you cancel the balance

of our order as we can't get cars?" The plaintiff answered that it could not cancel the contract, but that it would extend his time to deliver one week. The plaintiff wrote other letters requesting deliveries of the corn, and, in a letter of December 31, 1917, the defendant for the first time suggested or made any claim that it was released from its contract by the failure of the plaintiff to accept M. P. car 36379. He used these words to suggest such a claim:

"Will say I can't ship you any more corn, as you turned down some that I shipped you, and I can prove that the corn was all O. K., and I can find other shippers that you turned down lots of corn for."

[5] During all this time prior to December 31, 1917, the plaintiff was selling corn in reliance upon the delivery to it by the defendant of the 18 cars of corn which he agreed by his contract to deliver. It would not have done this if the defendant, by refusing to permit it to draw back for the corn in car M. P. 36379, or by any other notice, had informed it that he would claim that he was released from his contract by the plaintiff's failure to accept that car. It is a familiar statement of the doctrine of estoppel that one who by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter rightfully acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial. Given v. Times, 114 Fed. 92, 95, 52 C. C. A. 40; Independent School District v. Rew, 111 Fed. 1, 5, 49 C. C. A. 198, 55 L. R. A. 364; Lee Blakemore, Inc., v. Lewelling (C. C. A.) 281 Fed. 952, 958.

The defendant's direction to the plaintiff to draw back the purchase price of the corn in M. P. car 36379, his acceptance of the corn in that car, and his payment of the draft without any notice to the plaintiff that he claimed that he was released from the contract, and his silence on that subject until December 31, 1917, while the plaintiff, in reliance upon his agreement to deliver the remaining 18 cars of corn, was selling corn against that expected corn, brought him under this salutary rule, and entitled the plaintiff to the charge to the jury which it requested.

Let the judgment be reversed, and let the case be remanded to the court below, with directions to grant a new trial.