ISAAC H. BLANCHARD COMPANY, Respondent, v. F. B. HAMBLIN, Manager of the Printers' and Publishers' Reciprocal Underwriters at Printers' Exchange, Appellant.

Kansas City Court of Appeals, March 4, 1912.

1. **INTERNDEMNITY CONTRACT: Fire Insurance.** A contract between a limited number of individuals, partnerships and corporations engaged in the same line of business by which they merely undertake to indemnify each other against loss by fire, and do not purpose to issue policies to others not parties to the contract, is not a contract for the creation of an insurance business within the meaning of that term expressed in the statutes.

2. ———: **Private Corporations: Ultra Vires.** Private business corporations have the right to enter into interindemnity contracts to protect themselves against loss by fire, and are not *ultra vires* a private business corporation.

3. ———: **Equity.** An action in equity will lie against the manager of an interindemnity exchange, who is the attorney in fact of all the members and the custodian of the common fund, as the trustee of an express trust, in favor of a policy holder who has sustained a loss to reach the fund.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich*, Judge.

AFFIRMED.

*Battle McCardle* for appellant.

(1) By the terms of the contract between plaintiff and the other members of the association, it was made a condition precedent to the taking effect of any insurance, and the attaching of any liability on the part of a member, that the association should have one hundred or more subscribers. At no time did the association have one hundred subscribers. For such cause this action must fail. Railroad v. Newton, 74 Mass. 596; Literary and Scien. Ins. v. Prescott, 40 N. H. 330; Railroad v. Sullivan, 57 Ga. 240; Phillips v. Cov. and Cin. Bridge Co., 59 Ky. 219; Bridge Co. v. Chapin, 6 Cush. 50, 60 Mass. 50; Rutz v. Esler and Ropriquit Co., 3 Ills. App. 83; Turner v. Baker, 30 Ark. 186. (2) Defendant is not a party to the contract sued on. The only parties to a contract are those named in it as such, or who sign it, or their privies. No judgment against this appellant can be sustained. Dicey Parties to Actions (2 Ed.), 223; Bates v. Knorr, 12 Misc. Rep. (N. Y.) 395, 33 N. Y. Sup. 691; Concentrating Works v. Ackerman, 6 App. Div. (N. Y.) 540, 39 N. Y. Sup. 585; Stieglitz v. Belding, 20 Misc. Rep. (N. Y.) 297, 45 N. Y. Sup. 670; Biggerts v. Hicks, 18 Misc. Rep. (N. Y.) 593, 42 N. Y. Sup. 236; Gough v. Satterlee, 32 App. Div. (N. Y.) 33, 52 N. Y. Sup. 492; Lumber Co. v. Mundy, 62 N. J. L. 16, 55 L. R. A. 193, 42 Atl. 1063; Evans v. Hooper, L. R. 1 Q. B. Div. 45; Gray v. Pearson, L. R. 5 C. P. 568. (3) The provision authorizing suit against F. B. Hamblin, manager, etc., is void: a. As in violation of code of civil procedure of Missouri, R. S. 1899. b. As contrary to public policy. c. As ousting courts established by law of jurisdiction. White v. First Nat. Bank, 220 Mo. 717; State ex rel. v. Staed, 64 Mo. App. 28; Moore v. Stemmons, 119 Mo. App. 162; Douthit v. Stinson, 63 Mo. 268; Richard v. Ins. Co., 31 Mo. 518; Gray v. Pearson, L. R. 5 C. P. 568; Evans v. Hooper, L. R. 1

Q. B. 45; Woerther v. Miller, 13 Mo. App. 567; Hadley v. Berneo, 103 Mo. App. 549; Dennis v. Bailey, 104 Mo. App. 638; Diffenderfer v. Rowden, 83 Mo. App. 268; Hamilton v. Ins. Co., 72 Mass. 174; Cobb v. Ins. Co., 72 Mass. 192; Insurance Co. v. Morse, 20 Wallace, 445; Dudley v. Mayhew, 1 N. Y. 184; Sanford v. Acc. Assn., 86 Hun, 380, 147 N. Y. 326, 41 N. E. 694; Crawford v. Lockwood, 9 How. Prac. 548; In re N. Y. L. and W. R. R. Co., 98 N. Y. 447. (4) Plaintiff and all subscribers named as delinquent are corporations chartered for and engaged in the business of printing. None are authorized to engage in the business of insurance or to write contracts of insurance. Neither plaintiff corporation nor the corporations named as delinquent were competent to become members of an association or partnership formed for any purpose. All contracts made by plaintiff and the corporations herein are *ultra vires* and void. Lumber Co. v. Oliver, 65 Mo. App. 435; Mill & Lumber Co. v. Sims, 197 Mo. 507. (5) Plaintiff and all subscribers named as delinquent, except two, were foreign corporations. None had complied with the insurance laws of the state of Missouri. None had been licensed to write contracts of insurance, or to engage in the insurance business, by the superintendent of the insurance department of Missouri. All contracts so made were void as between the members of this association. R. S. 1899, secs. 7945, 7948, 7950, 7951, 7952, 7957, 7958, 7963, 7979, 7989, 7990, 8002; State v. Stone, 118 Mo. 388; Swing v. Cider & Vinegar Co., 77 Mo. App. 391; Insurance Co. v. Smith, 73 Mo. 368; State v. Alley, 96 Miss. 720, 51 So. 467; Jalonick v. Oil Co., 66 S. E. 815; Fort v. Georgia, 92 Ga. 8, 18 S. E. 14; People v. Ackerman, 51 Oh. St. 163, 37 N. E. 828.

*Lathrop, Morrow, Fox & Moore* and *Boyle & Howell* for respondent.

(1) When one hundred or more parties willing to enter into such an insurance arrangement as this signed the contract, agreeing to do so, they became subscribers, and it was not necessary that one hundred or more policies should be accepted in order to make the parties who had signed the agreement and accepted policies subscribers. In this case, one hundred and seven parties subscribed (admitted by appellant, page 9 of his brief) an agreement to enter into such an arrangement before any policies were issued. (2) There is no merit in the contention that the defendant was not a party to the contract, and so cannot be sued. The contract provides that he shall be sued. It appears that the subscribers arranged this inter-indemnity insurance for their own protection and by the agreements, appointed Mr. F. B. Hamblin manager, as a matter of convenience to themselves. The cases cited by appellant under this heading do not apply to the facts in this case. The delinquent subscribers were sued in this case strictly in accordance with the terms of the agreement which they entered into of their own volition, and of which they received and accepted the benefits. They had a right to make such private contracts as this. It is guaranteed by the Fourteenth Amendment to the Constitution of the United States. And it is a well known rule of law that where a contract is capable of two constructions, one making it valid, and the other void, the former ought to be adopted. Hammond v. Haskell, 112 Pac. 575; Lippert v. Theater Co., 129 N. W. 409. (3) Appellant seeks to avoid liability for the delinquent subscribers upon the theory that the provision authorizing suit against the manager is void, in that it is a violation of the code of procedure of this state. Apparently, an English case is cited in support of this contention,

but it appears, upon an examination, that the facts in that case are not even similar to the facts in this case. White v. Bank, 320 Mo. 717.

JOHNSON, J.—This is an action on a policy of fire insurance issued by an unincorporated association of printers and publishers, organized and operated, not for profit but for the purpose of providing mutual insurance at actual cost. The answer pleaded defenses the nature of which will be disclosed in our discussion of the different issues we are called upon to determine. The learned trial judge who tried the case without a jury and, doubtless, regarded it as a case in equity, rendered judgment for plaintiff in accordance with the prayer of the petition. Defendant appealed.

The facts are not in controversy and may be stated as follows:

In 1906, certain corporations, firms and individuals organized under the name of ''The Printers' and Publishers' Reciprocal Underwriters at Printers' Exchange'' for the purpose of insuring each other's business establishments. One hundred and seven different concerns operating in the principal cities of the Union became members of the association by signing the preliminary written agreement by which it was created. This agreement stipulated ''for maintaining an office where policies of fire insurance may be underwritten for the firms, corporations or individuals herein called subscribers,'' for the supervision of the business by a committee of subscribers elected annually; and for the appointment of F. B. Hamblin as manager with headquarters at Kansas City. The manager's duties thus were defined: ''The manager's duties shall be to underwrite for the subscribers in his own name, as manager, policies of insurance against loss or damage by fire or lightning, to reinsure same, to make cancellations, and changes in the amounts and

conditions of same; to collect all sums due from sub-
scribers by virtue thereof, security for which he must
furnish a good and sufficient bond; to adjust and set-
tle any loss, and to perform such other acts in rela-
tion to such policies as the subscribers could them-
selves do. . . . The manager may commence and
prosecute any proceeding at law in connection with
any policy issued by him which he may deem proper
and may compromise, settle or withdraw the same,
also may appear for the subscribers in case of any
proceedings at law being taken against them in con-
nection with any policy, and in their name defend,
compromise or settle same.''

Other stipulations characterize the organization
as one formed not for profit but to provide insurance
to its members at cost.

Of the one hundred and seven signatory members,
five were dropped by the association at the beginning
and no policies were issued to them. One of the sub-
scribers returned his policy the day it was issued. This
reduced the number of those who accepted policies to
one hundred and one. There were five of those who
returned their policies shortly after accepting them
without paying anything for the insurance during the
time the policies were in force. The preliminary agree-
ment contained the provision: ''Nothing herein shall
be construed to obligate in any manner the subscriber
hereto, until he shall elect to become a policy holder
and thereafter only while holding a policy.''

Before the issuance of a policy to a member he
was required to fill out and sign an ''information
blank'' which contained the clause, ''This insurance
is to take effect when this exchange has one hundred
or more subscribers and not before,'' and the policies
defined subscribers as ''those and only those that have
executed an agreement (hereby made a part hereof)
which vests in F. B. Hamblin of Kansas City, Mis-
souri, called the manager, the power to underwrite and

issue this contract for them, and have accepted contracts of insurance against loss or damage by fire, issued by this exchange, and whose contracts are then in force." And further provided "if a subscriber fails to make a deposit as stated herein within thirty days, this contract of insurance shall be void and of no effect."

Plaintiff was one of the original members and a policy of $5,000, was issued on its printing establishment and accepted. It sustained a loss by fire on May 5, 1907, while the policy was in force. This was the third loss sustained by the association in the first six months of its existence and the funds derived from the first premiums had been exhausted and assessments of the members were required to replenish the fund. Many of the members responded to the assessment levied to pay the loss of plaintiff but a large number refused to pay and by their default plaintiff's loss has been only partially reimbursed. There still remains unpaid $744.21, the aggregate of the assessments of the defaulting members. Two other losses occurred shortly after that of plaintiff and the last one put the association out of business. Its manager canceled all outstanding policies. The policy contained the following stipulation:

"To avoid a multiplicity of suits, all suits or other proceedings at law or in equity, shall be begun and maintained for the recovery of any claim, upon, under, or by virtue of this contract against the manager in the court which is the highest court of original jurisdiction; and, a final decision in such suit, or other proceeding, shall be taken to be decisive of the similar claim so far as the same may subsist, against each of the other underwriters at interest, absolutely fixing the liability in the premises, each of the underwriters, in consideration of the entire stipulation, so far as he individually is or may be concerned, expressly agrees to accept and abide by the result of

such final decision, in the same manner and to the same effect as if he had been sole defendant in a similar suit or proceeding as to the similar claim against him, so far as the same may subsist, save and except, however, as to the matter of cost and disbursements. And the manager is hereby authorized as to each underwriter, to receive and admit service of process in any suit or other proceeding begun or maintained as aforesaid.''

The manager was not a policyholder or member of the association. On these facts the court rendered judgment for plaintiff in which the amounts due from the respective delinquent members were adjudged.

In their argument for a reversal of the judgment, counsel for defendant say none of the policies issued by the manager ever became vitalized nor did the association, in fact, become a living thing, for the reason that the terms of the contract fixed the minimum strength of the proposed organization at one hundred units, i. e., policy-holding members, and since this standard was not realized, there was no organization and, consequently, no reciprocal obligation among the alleged members. This argument is based on the idea that the five signatory members who received and retained their policies for a time and then surrendered them without paying the first premium were not subscribers within the definition of the contract.

The provision ''this insurance is to take effect when this exchange has one hundred or more subscribers and not before'' clearly was intended to prescribe the conditions under which the association should be launched and put into commission as a going concern and was not intended to fix a standard for its continuance in business. Starting with a membership of one hundred or more the association, *ipso facto,* would not be dissolved by the reduction of its membership, below the initial standard. The payment of the first premium was not made a condition precedent to the ac-

ceptance of a policy and, therefore, the act of the five members under consideration in receiving and retaining their policies constituted an acceptance which aided in the fulfillment of the conditions that set the concern going, and their subsequent withdrawal and surrender of their policies, thereby reducing the membership below its original contractual level, did not paralyze the association nor devitalize the policies of the continuing members. Further, it is argued by counsel for defendant that the association was unlawful and its policies void for the reason that the purpose of its members was to do an insurance business without complying with the statutes of this state relating to such business. [Arts. 5 and 6, Ch. 119, Rev. Stat. 1899.] This contention is not without support in the authorities. The most apposite case to which we are referred is State v. Alley, 51 So. Rep. 467, decided by the Supreme Court of Mississippi. We are much impressed by the reasoning of that decision but have concluded that a proper construction of our statutory law relating to insurance discloses the inapplicability of the rules announced in that and similar cases. A contract between a limited number of individuals, partnerships, and corporations engaged in the same line of business by which they merely undertake to indemnify each other against loss by fire, and do not purpose to issue policies to others not parties to the contract is not a contract for the creation of an insurance business within the meaning of that term expressed in our statutes. It is to be classified as an interindemnity contract and, therefore, as a contract outside the purview of the insurance law in force at the time the contract was made. In 1911, the Legislature passed an act requiring such associations to file a declaration in writing with the superintendent of insurance setting forth the name or title of the office through which such individuals, firms or corporations exchange such contracts; a copy of the form of

contract under which such indemnity is to be effected; the location of the office through which such contracts are to be issued and that service of process may be had upon the superintendent of insurance in this state in all suits arising out of such contract, but in the first section of the act it is declared that, ''The making of contracts between individuals, firms, or corporations providing indemnity among each other from casualty or other contingency, or from fire loss or other damage to their own property, shall not constitute the business of insurance and shall not be subject to the laws of this State relating to insurance.'' [Laws 1911, p. 301.]

This was merely declaratory of the law in force at the time the interindemnity contracts under consideration were made and the purpose of the act was to bring such exchanges under the supervision of the insurance department. This purpose, of course, could not be made retroactive, and the only effect upon the present case that can be accorded the act is to say that it contains a concrete enunciation of the legislative view that interindemnity contracts are not contracts of insurance and, therefore, were not affected by the insurance laws.

The very highest policy of a state is its statutory law and if there is legislation on the subject the public policy of the state must be derived from such legislation [Moorshead v. Railways Co., 203 Mo. 121.] What we have just said answers another contention of defendant to the effect that these contracts of indemnity were void because many of the members of the exchange were private business corporations and, therefore had no power to engage in the insurance business. They did have the right to make contracts protecting themselves against loss by fire and under the view that these were merely contracts of interindemnity we perceive no good ground on which it might be said they were *ultra vires* a private business corporation.

The last proposition advanced by defendant to which we shall refer is that this action must fail because of the absence of a legal party defendant. Hamblin was the manager of the exchange, issued the policies was custodian of the common fund and by the express terms of the contract, and to avoid a multiplicity of suits, was constituted the attorney in fact of all the members to sue and be sued in their places and as their representative. Moreover, as to the common fund, he was the trustee of an express trust and an action in equity would lie against him in favor of a policy holder who had sustained a loss to reach the fund.

We are disposed to regard this action as one in equity for the adjudication of the demand of plaintiff caused by its fire loss and of the amounts due by each of the defaulting members to the fund out of which the demand should and must be paid. As is well said in Warfield v. Williamson, 223 Ill. 487, 84 N. E. Rep. 706: "The case belongs to that class where both the primary rights and the relief sought are purely legal, but of which a court of equity will take jurisdiction on the ground that, owing to the methods of procedure and the means available to carry its decrees into execution, its remedies are more adequate, complete and prompt than those afforded by a court of law."

We find an answer in the decision just cited to the principal points of defendant's argument in support of the proposition under consideration and refer to that decision for an extended discussion and proper solution of such questions. The case of Bank v. White, 220 Mo. 717, is not in point.

We find no error in the record and accordingly the judgment is affirmed. All concur.