SHERMAN & ELLIS, INCORPORATED, v. INDIANAPO-
LIS CASTINGS COMPANY.

[No. 24,682. Filed May 23, 1924. Rehearing denied November 18, 1924.]

1. TRUSTS.—*Express Trust.—Suit by Trustee.—Disclosure of Representative Capacity.*—To be sufficient as a complaint by the trustee of an express trust the pleading must clearly disclose that the plaintiff is acting in a representative capacity and should disclose who is the *cestui que trust.* p. 380.

2. INSURANCE.—*Employers' Reciprocal Insurance Association.— Right of Attorney to Maintain Action in Own Name.*—The attorney in fact of an employers' reciprocal insurance association organized pursuant to §71, Acts 1915 p. 414, §8020c3 Burns' Supp. 1921, had no right to sue and recover in his own name premiums due the association. p. 381.

From Marion Superior Court (A9,930); *Lynn D. Hay,* Judge.

Action by Sherman and Ellis, Incorporated, against the Indianapolis Castings Company. From a judgment for the defendant, the plaintiff appeals. (Transferred

from the Appellate Court under §1394 Burns 1914, §10, ch. 247, Acts 1901 p. 567.)    *Affirmed.*

*Joseph W. Hutchinson,* for appellant.

*Elmer E. Stevenson,* for appellee.

EWBANK, J.—A demurrer for insufficiency of facts was sustained to appellant's complaint, and upon its refusal to amend or plead over judgment was rendered that it take nothing, and that appellee recover its costs. Sustaining the demurrer is the only error assigned.

The complaint is entitled "Sherman & Ellis, Inc., a corporation vs. the Indianapolis Castings Company," and does not suggest anything more as to the character in which or the persons on behalf of whom the plaintiff sues. The complaint recites that, "The plaintiff complains of said defendant and for cause of action against said defendant says that said plaintiff is a corporation;  *  *  *  authorized to do business in the State of Indiana, under and pursuant to its laws, and to act as attorney, in fact to make, subscribe, issue, change, modify, reinsure or cancel contracts exchanging insurance and indemnity and to do all other acts as manager for reciprocal insurance exchanges, together with such other business as may be incidental and necessary in connection therewith. That the defendant is a corporation organized under the laws of the State of Indiana and doing a manufacturing business in the city of Indianapolis." It then alleges, in substance, that the defendant was operating under the Workmen's Compensation Act, and was required to keep its liability thereunder insured; that the Industrial Board, by authority of §71 of said act (Acts 1915 p. 392, §8020c3 Burns' Supp. 1921) had fixed the conditions and restrictions in conformity with which reciprocal insurance associations might conduct their business, which are recited at length in the complaint, as hereinafter re-

ferred to and set out in part; that pursuant to said act and the conditions and restrictions so fixed by the Industrial Board the Indiana Manufacturers Reciprocal Association was organized to which defendant became a subscriber for the purpose of insuring its said liability, and continued to be such member from March 7, 1917, until October 1, 1918; that said association was composed of employers of labor (neither the number nor names of any other than defendant being given), who "formed such association for the purpose of complying with said Workmen's Compensation Act * * * conformably with law"; that each subscriber thereto was required to and did execute "a common power of attorney appointing the plaintiff to act for and in its stead in the exchange of insurance contracts, in demanding, collecting and in receiving money due any subscriber, and authorizing said plaintiff to bring and prosecute in its own name, any suit or action at law or in equity for or on behalf of said subscriber," a copy of the form in which each power of attorney was executed being set out, as hereinafter stated (which does not, however, contain a grant of authority nearly so broad as is here alleged) ; that the association was organized with a board of trustees chosen by the subscribers; "that at the time the different subscribers, including this defendant, executed said power of attorney and received the policy as hereinafter set out, it was understood and agreed between the different subscribers that each had executed said common power of attorney"; that three different policies of indemnity insurance were issued by the association to defendant through plaintiff, as attorney in fact for each of the subscribers, each policy covering a different period of time; that each policy provided for the payment of an advance premium, and for an adjustment, at the end of certain periods or at the end of the time during which

the insurance should be in force, of the total premiums, so that each subscriber should pay his share of the total cost of insurance and expenses of the association in proportion to his payroll; that for reasons stated and as determined by action of the board of trustees, defendant's proportion was fixed at certain named sums for each of the periods covered by its different policies, respectively, but having terminated its insurance more than a year before suit was commenced, defendant had paid only part of such premiums, and had refused to pay $4,025.01 thereof, and was indebted to plaintiff in the sum of $4,025.01, with interest, for which plaintiff had made a demand upon defendant.

The statute referred to provides that "for the purpose of complying with §68, groups of employers, to form mutual insurance associations subject to such reasonable conditions and restrictions as may be fixed by the Industrial Board are hereby authorized." §71, Acts 1915 p. 392, §8020c3 Burns' Supp. 1921.

The italics used in setting out the following instruments are our own. The conditions and restrictions in conformity with which reciprocal insurance associations might conduct their business, alleged by the complaint to have been fixed by the Industrial Board, included the following, in substance:

Section I. The employers forming a Reciprocal Insurance Association shall, through their authorized attorney in fact, file with the Industrial Board, for its approval, a verified declaration setting forth (1) the name adopted, (2) the location where it will conduct business, (3) a copy of the form of policy contract to be used, (4) a copy of the power of attorney by which each member authorizes the execution of such policies, (5). the number of employes and amounts of annual payrolls to be represented, (6) the fact that the required reserve has been deposited and (7) a list of the

employers forming the association, with their addresses, net wealth, and amount of indemnity assumed by the association.

Section II. All policy contracts shall be executed by an attorney in fact authorized by power of attorney from the employers to do so, which power of attorney must authorize the attorney in fact to file the written statement above required, and may (if desired) *provide for a board of trustees* of not less than five, to be chosen annually by the employers from their own number, which *"shall have charge of and direct the general management, supervision, operation and control of the business affairs of said association, including the collection, safekeeping and disbursement of its funds,"* and *may select a treasurer* to hold and disburse its funds, who shall give bond.

Section III. Authority must be given for the Chairman of the Industrial Board *to accept service of process upon "each employer* executing the power of attorney," in all suits arising out of the policy contracts of the association, and "to enter in any such suit *the personal appearance of each of said employers"* after giving five days notice to the attorney in fact that process has been so served.

Section IV. The attorney in fact shall file with the Industrial Board his bond for $50,000 or more, to be approved by said board.

Section V. Each association shall maintain a reserve fund of a designated amount to be provided out of the premiums collected. "Each employer shall pay in cash in advance the full estimated premium upon each policy contract issued to him for a period of one year or less, and shall pay cash in advance annually the full premium for at least one year upon each policy contract issued to him for a longer period than one year."

Section VI. This requires full payment of any liability within thirty days after it is determined, or the deposit in a bank or trust company of funds sufficient to pay the full amount of a liability payable by instalments, within thirty days after such continuing liability is determined, and regulates the manner of paying accruing instalments.

Section VII. This requires full payment by a member, upon his withdrawal from the association, of the entire amount of his liability for all injuries that has previously accrued, such payment to be made within thirty days after the amount of such liability shall have been determined.

Sections VIII, IX and X. These require the attorney in fact to file a statement of the names and addresses of the members, with information as to their wealth and the indemnity assumed, and annual reports of the condition of the association, the premiums collected, losses paid, etc. And require the association annually to obtain a certificate of authority from the Industrial Board, which is given power to revoke or suspend such authority for cause.

The power of attorney alleged to have been executed by defendant, being in the form alleged to have been executed by each subscriber to the Indiana Manufacturers Reciprocal Association, recited that the purpose was to secure adequate protection against liability under the Indiana Workmen's Compensation Act by the exchange of private contracts through plaintiff as attorney in fact; that the subscriber executing it "hereby appoints Sherman & Ellis *our attorney for us in its name as our attorney* to make, subscribe, issue, change, modify, reinsure or cancel contracts exchanging insurance and indemnity and agreements for such exchange of contracts * * * *to demand, collect, receive and receipt for all moneys due us* for credit to

our account as a subscriber, to give, waive or receive all notices or proofs of loss; to adjust or settle all losses and claims under such contracts or other evidence of indemnity; to perform or waive all agreements or stipulations of any such contracts; *to appoint the chairman of the Industrial Board of the State of Indiana as our agent, upon whom service of process may be made* with the same force and effect as if made upon ourselves, and to *authorize him to enter our personal appearance in any suit * * * upon any policy contract herewith authorized, after having given the within attorney in fact five days written notice of the service of process upon him; *to appear for us in any suits, actions or proceedings, and, to bring, prosecute, defend, compromise, settle or adjust same;* to perform every act not herein specifically mentioned that we could ourselves do in relation to any contract, hereby authorized; with power of substitution by said attorney, *substitute selected to be approved by the trustees.* The intent and purpose of this instrument is to clothe our said attorney with the power necessary to enable us, through it, to exchange contracts of insurance and indemnity with other subscribers; provided, however, that *said attorney shall have no power to bind us jointly with any* other subscriber, but it shall have power only to bind us severally and for ourselves alone. There shall be no joint funds, capital or stock, but a separate individual account shall be kept by our attorney with us and with each subscriber; said account to be open to our inspection. As compensation, * * * our said attorney is hereby authorized to deduct thirty per cent. of all moneys received by it for credit to our account, except subscription deposit. The trustees, consisting of five or more subscribers, shall be selected by the subscribers. * * * The trustees shall * * * *make such disposition of the funds of the subscribers,* with reference

to the investment thereof, as may be *necessary to pro-tect the interests of subscribers.* \* \* \* All dis-bursements from funds of subscribers shall be by check signed by our attorney and *countersigned by one of the* trustees, to be designated by said trustees. Said attor-ney and the countersigning trustees shall give such bond as may be required by the trustees and the Industrial Board of Indiana. After the adjustment or compro-mise of any loss or claims by our attorney as above provided *the trustees are empowered and instructed to pay our portion of such loss or claim.* If, at any time, losses should occur in an amount sufficient to require for their payment any part of our subscription, herein-after provided for, we will, upon demand, pay an amount adequate to defray our portion of such losses and leave our subscription intact. \* \* \* This power of attorney is *strictly limited to the uses and pur-poses herein expressed and to no other use or purpose,* and is subject to the conditions and restrictions pre-scribed by the Industrial Board. \* \* \* The under-signed hereby make a subscription of one half annual premium as a surplus to be deposited upon demand therefor with the trustees."

It is first objected that even though it be granted that a liability of defendant for unpaid premiums on his in-surance policies is shown, the facts stated only show a liability to the association, and not to plaintiff; and that no facts are alleged which give plaintiff any right to sue and recover in its own name money owing to the association, but not to itself. It will be observed that the complaint does not name any member of the Indi-ana Manufacturers Reciprocal Association except the defendant, and that defendant is the only person or corporation named as having executed the alleged power of attorney, the other supposed subscribers being men-tioned only as an indefinite number of unidentified

"employers of labor"; that neither the title nor the opening sentences of the complaint contain any intimation that plaintiff is suing in a representative capacity of any kind or otherwise than in its own absolute right; that there is no averment that the board of trustees has ordered or authorized plaintiff to bring suit, whether in its own name or otherwise; that §71, *supra*, of the statute relied on as giving authority for the formation of such association, makes no provision whatever for bringing suit in any other manner than is authorized by the general law; that the alleged conditions and regulations for the formation of such associations promulgated by the Industrial Board do not contain any statement that the attorney in fact shall have power to sue in its own name for money due the association, even if they could give such right, but provide for the election of a board of trustees, with power to direct, manage and control the business of the association, including the collection, safekeeping and disbursement of its funds, and to choose a treasurer; and provide for the acceptance of service of process on behalf of each employer, and for entering the personal appearance of each employer, in case of an action on a contract made by the attorney in fact in behalf of the association; and the power of attorney alleged to have been executed by defendant and others only authorizes Sherman and Ellis, Inc. to act "for us in its name as our attorney" in the many things authorized to be done, which include authorizing the chairman of the Industrial Board to accept service of process upon the principal and enter his appearance, and to appear for him in suits, and to bring and prosecute the same. But it does not purport to give authority to do anything otherwise than "for us in its name as our attorney," and fails to suggest any purpose to confer authority to maintain an action for money due the association by suing merely as "Sher-

man & Ellis, Inc." And it also contains an express proviso that "said attorney shall have no power to bind us jointly with any other subscriber." And having provided for a board of trustees, chosen by the subscribers, it authorizes the trustees to make disposition of the funds of the subscribers, and requires all payments therefrom to be countersigned by a trustee, acting as treasurer, under bond. Having thus limited the authority of the attorney in fact, it then expressly stipulates that the power conferred "is strictly limited to the uses and purposes herein expressed and to no other use and purpose."

It thus appears that the power of attorney only appointed plaintiff "our attorney for us in its name *as our attorney*" to do certain acts in the matter of executing and canceling certain contracts, and acts incident to the performance of such contracts, and the adjustment and payment of losses, and to collect and receive money due the subscriber, with further power to appear for the subscriber in all actions, "and to bring, prosecute, defend, compromise, settle or adjust the same," as such attorney in fact. But withholding all "power to bind us jointly with any other subscriber," and declaring the power thus granted to be "strictly limited to the uses and purposes herein expressed, and to no other use or purpose, and subject to the conditions and restrictions prescribed by the Industrial Board," as above set out. And that it provides for a board of trustees, chosen by the subscribers, and that one of their number shall countersign all checks.

Such power of attorney did not give the plaintiff title to the unpaid premiums due the association, nor did it make the plaintiff a "trustee" of such funds by designating him only an "attorney in fact" for each individual employer who became a subscriber, with strictly limited powers. And the power "to bring and prose-

cute" actions only purported to confer authority to do so as such attorney, while the ultimate control was vested in the board of trustees.

So far as its language is pertinent to the questions now under consideration, the Civil Code provides as follows: Sec. 3. Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in the next section. * * * Sec. 4. An executor, administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another. * * *" §§251, 252 Burns 1914, §§251, 252 R. S. 1881, §§3, 4, Acts 1881 p. 240.

To be sufficient as a complaint by the trustee of an express trust the pleading must clearly disclose that the plaintiff is acting in a representative capacity,

1. and should indicate who is the *cestui que trust*, so that issue may be taken upon that allegation, if necessary, and also that the *cestui que trust* may be bound by the judgment or decree. *Marion Bond Co.* v. *Mexican, etc., Co.* (1902), 160 Ind. 558, 563, 65 N. E. 748. And a mere agent in the making of a contract on behalf of another which was not made "with him, in his name, for the benefit of" his principal, but was really negotiated by him between the principal and the other contracting parties, is not within the statute. *Mitchell* v. *St. Mary* (1897), 148 Ind. 111, 115, 47 N. E. 224. The mere fact that plaintiff, as attorney in fact, was to receive as compensation thirty per cent. to be deducted from all moneys received by it to the credit of each subscriber executing a power of attorney in the form used by all of them in common, neither gave

it title to the unpaid premiums nor made it the "trustee of an express trust" embracing such premiums.

It follows that the facts alleged in the complaint did not show that plaintiff had the right to sue for and recover in its own name the premiums alleged to

2. be due and unpaid. Therefore the demurrer to the complaint was properly sustained. *Hammond* v. *Cline* (1908), 170 Ind. 452, 84 N. E. 827; *State, ex rel.,* v. *Liberty Tp., etc.* (1912), 50 Ind. App. 208, 210, 98 N. E. 149.

The complaint being bad for the reasons indicated, we need not consider and do not decide whether or not it would have been sufficient in other respects.

The judgment is affirmed.

Myers, C. J., concurs in the conclusion.