### IRWIN et al. v. MISSOURI VALLEY BRIDGE & IRON CO.

Circuit Court of Appeals, Seventh Circuit. April 12, 1927.

Rehearing Denied May 25, 1927.

No. 3757.

1. **Courts ⟨≡⟩308—Federal court held to have jurisdiction of suit by member of insurance reciprocal against class exchanging contracts therein and residing in different states.**

Federal court *held* to have jurisdiction of suit by member of reciprocal insurance company against class of persons who had exchanged contracts therein, and who resided in different states, where part of relief sought was assessment against each member to pay losses, and there was a conflict with interest of members in that exact amount of assessment, depended on the class to which member belonged as well as date of entry into agreement.

2. **Courts ⟨≡⟩308—Diversity of citizenship, where members of insurance reciprocal were made defendants as class, is determined by status of parties at date of suit.**

Where plaintiff in suit against members of reciprocal insurance company made a representative number of members parties defendant, as a class, issue of diversity of citizenship of parties in determining jurisdiction of federal court must be determined by citizen status of parties before court as of date when suit was begun.

3. **Courts ⟨≡⟩317—Court, in determining diversity of citizenship of members of insurance reciprocal, made defendants as class, must align parties according to similarity of interest.**

In determining diversity of citizenship, as bearing on federal court jurisdiction in suit where members of insurance company were made parties defendant as a class, court must align parties according to similarity of their interest, and determine diversity of citizenship only after making such alignment.

4. **Insurance ⟨≡⟩12½, New, 1927 Current Digest—Court of equity could appoint receiver for insurance reciprocal, whose affairs were involved, where attorney in fact confessed inability to complete duties.**

Court of equity *held* to have authority to appoint receiver for insurance reciprocal company in suit by member and unsecured creditor, where affairs of the reciprocal company were badly involved, payment of claims being in ar-

rears, and unliquidated claims increasing, particularly where attorney in fact, having in his possession a large fund belonging to members appeared in court, and in substance confessed his inability to effectively carry out his duties; it then being duty of court of equity to see that such fund was not lost or dissipated through want of a trustee.

**5. Courts ⟐280(10)—Equity ⟐42(1)—Objection that evidence does not make case in equity may be waived, and does not go to jurisdiction of federal court.**

Objection that evidence does not make case cognizable in equity may be waived, and does not go to the jurisdiction of the federal court.

**6. Insurance ⟐12½, New, 1927 Current Digest—Unsecured creditor has standing in equity, where defendants either joined in request for relief, or admitted facts.**

An unsecured creditor of insurance reciprocal company has standing in court of equity to secure appointment of receiver, where defendants either joined in request for same relief, or fully admitted all facts on which relief was sought, thereby effectively waiving their right to insist that claim should first be reduced to judgment and execution thereon returned unsatisfied.

**7. Insurance ⟐12½, New, 1927 Current Digest—Illinois law, authorizing procedure in winding up affairs of insurance reciprocal, held not exclusive (Insurance Reciprocal Act Ill. § 20).**

Insurance Reciprocal Act Ill. § 20 (Smith-Hurd Rev. St. 1925, c. 73, § 462) authorizing procedure to take charge of assets of subscribers of insurance reciprocal company and wind up its affairs, in case of refusal or neglect of attorney in fact to pay any valid judgment within 30 days, *held* not to provide an exclusive remedy, precluding right of member to protect his interests through legal proceedings.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Missouri Valley Bridge & Iron Company against W. T. Irwin and others. From a decree continuing a receiver theretofore appointed, defendants appeal. Affirmed.

Kemper K. Knapp, John R. Cochran, and Leonard F. Martin, all of Chicago, Ill., and Frank E. Tyler, of Kansas City, Mo., Joseph A. O'Donnell, Joseph D. O'Donnell, and James W. Burke, all of Chicago, Ill., for appellants.

Fred B. Silsbee, of Chicago, Ill., for appellee.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This appeal is from a decree continuing a receiver of "Subscribers at Associated Employers' Reciprocal," and directing him to "liquidate their affairs and assets under the name of Associated Employers' Reciprocal, Subscribers at Associated Employers' Reciprocal, or any similar or other name, whether or not such assets have heretofore been held or controlled by an attorney in fact or receiver," and directing the receiver "to collect from subscribers all unpaid premiums, etc., including the assessment herein levied," directing the receiver to "maintain offices" and employ help to carry out the task of liquidating the affairs of said reciprocal," ascertaining the amount of the claims, and collecting the assessments in order that such claims may be paid.

The complaint is unusually long, and sets forth in detail the history of the Associated Employers' Reciprocal, hereinafter called the Reciprocal, organized under the laws of Illinois, the business of which was conducted through an Illinois corporation, Sherman & Ellis, Inc., as attorney in fact for its members. This Reciprocal, when this suit was instituted, had some 10,000 members. Its business was similar to that of an insurance company that wrote casualty insurance covering employers' and automobile risks. Each member appointed Sherman & Ellis, Inc., its or his attorney in fact, who, in the name of the Reciprocal, issued to the member a policy of insurance of the class sought. In the course of time, as the business grew, the problem of settling losses and making assessments became more complicated and involved. The difficulties increased when either the Reciprocal or the attorney in fact began suits. The decisions are numerous that deal with the entity character of the Reciprocal, how it might sue or be sued, etc.

The confused and unsettled state of the law is illustrated by the following decisions: Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 482, 221 S. W. 259, 10 A. L. R. 742; Warfield-Pratt-Howell Co., 233 Ill. 487, 84 N. E. 706; Blanchard v. Hamblin, 162 Mo. App. 242, 144 S. W. 880; Wallace & Co. v. Ferguson, 70 Or. 307, 140 P. 742, 141 P. 542; Elliott v. Belt Automobile Indemnity Association, 87 Fla. 545, 100 So. 797; U. S. Shipping Board v. Sherman & Ellis, Inc., 208 Ala. 83, 93 So. 834; Sherman & Ellis, Inc., v. Indianapolis Castings Co., 195 Ind. 370, 144 N. E. 17; John L. Walker v. National Underwriter Co. (C. C. A.) 3 F.(2d) 102; Thomas Canning Co. v. Canners' Exchange Subscribers at Warner Insurance Bureau, 219 Mich. 214, 189 N. W. 214; Lewelling v. Manufacturing Wood Workers' Underwriters, 140 Ark. 124, 215 S. W. 258; Lee Blakemore, Inc., v. Lewelling (C. C. A.) 281 F. 952; Mountain Timber Co. v. Manufacturing

Wood Workers Underwriters, 98 Wash. 167, 167 P. 93; State v. Alley, 96 Miss. 720, 51 So. 467; Standard Auto Insurance Association v. Henson, 201 Ky. 230, 256 S. W. 414; Mazeika v. Automobile Underwriters of America, 226 Ill. App. 239; Devenny v. Automobile Owners' Inter Insurance Association, 124 Wash. 453, 214 P. 833; Indiana Manufacturers' Reciprocal Association v. Holmes, 79 Ind. App. 85, 137 N. E. 337; Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa, 1133, 184 N. W. 756; Nolan v. Illinois Auto. Insurance Exchange, 219 Ill. App. 531; Turner v. Henshaw (Ind. App.) 155 N. E. 223. Numerous other decisions, not reported, have been called to our attention, and they too only serve to stress the difficulties incident to the operation of a Reciprocal by the attorney in fact.

In 1924 these difficulties had so multiplied, and the Reciprocal's affairs become so seriously involved, that the insurance commissioners of the states of Illinois, Missouri, Kansas, Kentucky, Michigan, Texas, and Oklahoma investigated its affairs and the conduct of its business by Sherman & Ellis, Inc. The result was the withdrawal of Sherman & Ellis, Inc., as attorney in fact, and the substitution of Irwin. The situation was not cleared much. An effort was made to have the Reciprocal adjudged a bankrupt, but the District Court held that it was not subject to adjudication as a bankrupt. After working on the problem for some months, Irwin concluded that a court of equity was the best, and probably the only, place where the funds of the members could be lawfully distributed and the claims of claimants judicially fixed and determined. He therefore caused the present suit to be instituted, or at least encouraged its bringing.

When the bill was filed, he appeared and consented to the appointment of the receiver, and also filed an answer specifically admitting nearly all of the allegations of the bill. Among other things he said in this answer:

"And this defendant further admits that in the absence of funds in the hands of said attorney in fact with which to liquidate claims arising under said respective insurance contracts, the complainant, as well as all other claimants, should or are compelled to ask the relief of a court of equity to determine the respective rights and liabilities of the members of said class and the rights to the said funds in the hands of said attorney in fact and to come to the hands of said attorney in fact or otherwise collected.

"And this defendant, further answering, admits that it is impracticable, if not impossible, in suits at law for it to recover from the obligees upon its contracts of insurance the sum due and to become due thereon, and that there is no practical remedy other than in a court of equity to ascertain who the persons obligated by their respective insurance contract to the complainant and others and to ascertain the amount for which each may be liable or to determine the proportion and amount for which the complainant is liable to others, as alleged in paragraph 11 of said bill of complaint, and further admits that for the complainant to enforce its rights for contribution against all the members of said class would result in a multiplicity of suits and subject the complainant to be sued or involved in litigation by numerous other subscribers having like or similar claims of the defendant, as alleged in said bill of complaint."

Some months later when the receivers had partially completed their task, defendants Irwin and Sherman & Ellis, Inc., appeared, the latter through an attempted intervention and Irwin through an amended answer, and both sought to avoid the consequences of the action previously taken and to question the court's jurisdiction as well as the fact justification for the appointment.

The errors assigned may be considered under two heads: (A) The federal court has no jurisdiction of the cause. (B) The facts do not justify the appointment of a receiver. None of the other named defendants answered, save Wittenmeirer Machinery Company, which company defaulted on the hearing. No appellant herein made objection to the proceeding in the District Court, or saved any exception to any rulings, save appellants Irwin, and Sherman & Ellis, Inc.

[1] (A) Respecting the federal court's jurisdiction, it appears that plaintiff, a Kansas corporation, sued for itself and all others similarly situated. It alleged that it was a member of the Reciprocal and had a valid unpaid claim past due in excess of $3,000. It described the defendant's class character and citizen status as follows:

"The Missouri Valley Bridge & Iron Company, a corporation, brings this bill against W. T. Irwin, Sherman & Ellis, Inc., a corporation, Frank H. Ellis, and against the following persons individually and as representatives of a class of persons who have exchanged contracts of indemnity and insurance with each other and one another upon the plan of reciprocal insurance at the office of Sherman & Ellis, Inc., by individual, several commitments effected by agreement and through an attorney in fact, Hudrox Company, a corporation, Roberts & Schaefer Company, a corporation, D. M. Goodwillie Company, James B. Clow & Sons, a corpora-

tion, Polonia Coal Company, a corporation, Heco Envelope Company, a corporation, Kennedy Furniture Company, a corporation, Lake Zurich Dairy Company, a corporation, and Henry Landgraf.

"Complainant respectfully shows:

"(1) That the Missouri Valley Bridge & Iron Company is a corporation organized and existing under the laws of the state of Kansas and is a citizen of the state of Kansas and of no other state; the Hydrox Company, Roberts & Schaefer Company, D. M. Goodwillie Company, James B. Clow & Sons, Wittenmeirer Machinery Company, Polonia Coal Company, Heco Envelope Company, Kennedy Furniture Company, Lake Zurich Dairy Company, and each of them, are corporations organized and existing under the laws of the state of Illinois, and each of said companies is a citizen of the state of Illinois and of no other state, and each said company has its principal office and place of business in the city of Chicago in said state; W. T. Irwin is a citizen of the state of Illinois, and resides in the city of Peoria in said state; Sherman & Ellis, Inc., is a corporation organized and existing under the laws of the state of Delaware, and has its principal office and place of business in the city of Chicago and state of Illinois; Frank H. Ellis is a citizen of the state of Illinois and resides in the city of Chicago in said state; Henry Landgraf is a citizen of the state of Illinois and resides in the city of Chicago in said state."

The facts bring the case squarely within the holding of Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673. The language of the court in that case is particularly applicable:

"Owing to the number of interested parties and the impossibility of bringing them all before the court, the original suit was peculiarly one which could only be prosecuted by a part of those interested suing for all in a representative suit. Diversity of citizenship gave the District Court jurisdiction. Indiana citizens were of the class represented, their rights were duly represented by those before the court. The intervention of the Indiana citizens in the suit would not have defeated the jurisdiction already acquired. Stewart v. Dunham, supra [115 U. S. 61, 5 S. Ct. 1163, 29 L. Ed. 329]. Being thus represented, we think it must necessarily follow that their rights were concluded by the original decree. * * *

"If the federal courts are to have the jurisdiction in class suits to which they are obviously entitled, the decree when rendered must bind all of the class properly represented. The parties and the subject-matter are within the court's jurisdiction. It is impossible to name all of the class as parties, where, as here, its membership is too numerous to bring into court. The subject-matter included the control and disposition of the funds of a beneficial organization, and was properly cognizable in a court of equity. The parties bringing the suit truly represented the interested class. If the decree is to be effective, and conflicting judgments are to be avoided, all of the class must be concluded by the decree."

[2] Here the plaintiff sued for itself and on behalf of all others similarly situated. It could not make all of the members of the Associated Employers' Reciprocal parties defendant, because they were too numerous. It therefore selected a fairly representative number as representatives of all the members. Under these circumstances the issue of diversity of citizenship of the parties must be determined by the citizen status of the parties before the court. The jurisdiction of the federal court is determined as of the date when the suit is begun. Stewart v. Dunham, 115 U. S. 61, 5 S. Ct. 1163, 29 L. Ed. 329. Subsequent changes in the citizenship status of either plaintiffs or defendants did not affect the jurisdiction of the court. Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360.

[3] True, the court must align the parties according to the similarity of their interests. Sutton v. English, 246 U. S. 199, 38 S. Ct. 254, 62 L. Ed. 664. Diversity of citizenship will be determined only after the alignment is made. We are of the opinion, however, that the alignment as made by the pleader was the proper one, because part of the relief sought is an assessment against each member to pay the $2,000,000 of losses. The exact amount of each assessment depends upon the class to which the member belongs, as well as the date of his entry into the agreement. While there is much similarity in the position of all members, there is such a conflict of interest as to justify the alignment made by the pleader.

[4] (B) Should a court of equity have appointed the receiver? Under the management of Sherman & Ellis, Inc., the affairs of the Reciprocal became badly involved. Payment of claims was in arrears; the number of unliquidated claims was increasing; assessments on members were not fully or promptly paid. Legal difficulty arose in collecting the assessments through court action. With $400,000 cash in the possession of Irwin, the attorney in fact, with liabilities exceeding $2,000,000, with 10,000 members, some of whom had paid assessments, and others had not, some of

whom had unliquidated casualty claims that called for settlement, and others had none, the facts fell squarely within the language of the Ben Hur Case: "The subject-matter included the control and disposition of the funds of the beneficial organization and was properly cognizable in a court of equity."

It may be true that Irwin had no authority to bind the Reciprocal by the consent he gave or the answer he filed. The question of his authority so to act is not free from doubt. But surely Irwin, as attorney in fact, effectually waived any objection he, as an individual or as attorney in fact, might have had to the appointment of the receiver. Pusey & Jones Co. v. Hanssen, 261 U. S. 500, 43 S. Ct. 454, 67 L. Ed. 763; Brown v. Lake Superior Iron Co., 134 U. S. 530, 535, 10 S. Ct. 604, 33 L. Ed. 1021; Southern Pacific Railroad Co. v. U. S., 200 U. S. 341, 349, 26 S. Ct. 296, 50 L. Ed. 507. In fact no defendant, and this includes Sherman & Ellis, Inc., objected to any proceeding taken in the District Court until the former attorneys in fact were removed from any and all participation in the conduct of the Reciprocal's affairs by the receiver.

[5] As pointed out in Pusey & Jones v. Hanssen, supra, the objection that the evidence does not make a case cognizable in equity does not go to the jurisdiction of the federal court. Such an objection may be waived. Metropolitan Railway Receivership, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403. "Unlike lack of jurisdiction as a federal court (Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U. S. 379, 382 [4 S. Ct. 510, 28 L. Ed. 462]) lack of equity jurisdiction (if not objected to by a defendant) may be ignored by the court, in cases where the subject-matter of the suit is of a class of which a court of equity has jurisdiction. And where the defendant has expressly consented to action by the court or has failed to object seasonably, the objection will be treated as waived." Pusey & Jones Co. v. Hanssen, supra.

But if we pass, for the moment, from defendants' embarrassing position, due to their having participated in the institution of this suit and to their written consent to the appointment of a receiver, and examine the facts to see whether the court wisely exercised its discretion, what do we find? The attorney in fact had in his possession a large fund ($400,000) that belonged to 10,000 members of the Reciprocal and he was charged with the duty of conserving this large sum of money, as well as collecting and distributing still larger sums which became due under the 10,000 insurance policies. While thus charged with this duty,

he appeared in court and in substance confessed his inability to effectively and satisfactorily carry out his duties. He requested the court to appoint his successor.

It matters not whether the Reciprocal was an entity separate and distinct from its members, whether it could sue or be sued in its own name, or whether the attorney in fact could speak authoritatively for it in a court of equity. The fact remains that a large fund existed, that 10,000 members were interested therein, and a court of equity having jurisdiction of the parties would see that this fund was equitably distributed. The attorney in fact occupied a fiduciary relation toward the members of the Reciprocal and this fund they created and placed in his hand. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113. He appeared in court and confessed his inability to carry out this obligation and requested the court to appoint his successor. He in substance turned over to the court a fund laden with a trust. Lyman v. Bonney, 101 Mass. 563. It was the duty of the court of equity to see that such fund was not lost or dissipated through want of a trustee to administer it.

Grant that the Reciprocal was not a partnership. Yet plaintiff was a member of it, whatever it was called. Whatever its status may finally be determined, plaintiff showed a fund in which it was interested along with 10,000 others; that claims exceeding $2,000,000 existed; that obligations in varying amounts from the members to each other called for determination and enforcement. Plaintiff asked a court of equity to protect the fund and enforce the member's obligations and rights that arose as an incident to the creation and distribution of such fund.

It may be that the word "receiver" does not best describe the court's appointee; that he was but Irwin's successor. The litigants are interested in the relief sought—not in the name applied to the court's appointee. And it matters not whether the Reciprocal has an entity separate from its members or not, for the receiver—so called—merely took the fund which the trustee, the attorney in fact, turned over to the court to administer. The order appointing the receiver does not recite, nor was it the intention of the court to appoint, a receiver for the individual members of the Reciprocal. The order was entered for the sole purpose of administering the trust fund, distributing the assets on hand, and determining existing obligations and right of the members of the Reciprocal.

Plaintiff sued as a member of the Reciprocal, and also as its creditor, holding a valid

past-due obligation in an amount exceeding $3,000. Its standing in a court of equity was securely bottomed on its right as a member. Its allegations respecting the existence of a past-due indebtedness, as well as the diversity of citizenship statement, were for the purpose of invoking the federal court's jurisdiction.

[6] However, as an unsecured creditor, plaintiff, under the facts disclosed in this case, had a standing in a court of equity. It was not under the necessity of first reducing its claim to judgment and issuing execution thereon before applying to a court of equity for relief, because the defendants either joined in the request for the same relief or fully admitted all the facts upon which plaintiff sought equitable relief. In Metropolitan Railway Receivership, supra, the court said: "It is also objected that the Circuit Court had no jurisdiction because the complainants were not judgment creditors, but were simply creditors at large of the defendant railways. The objection was not taken before the Circuit Court by any of the parties to the suit, but was waived by the defendant consenting to the appointment of the receivers, and admitting all the facts averred in the bill. * * * That the complainant has not exhausted its remedy at law—for example, not having obtained any judgment or issued any execution thereon—is a defense in an equity suit which may be waived, * * * and, when waived, the case stands as though the objection never existed."

So, in the instant case, plaintiff's standing in a court of equity was unassailable, both because of its rights as a member of the Reciprocal and because of its rights as the owner of a valid past-due claim against the Reciprocal, as to which latter claim the defendants had effectively waived their right to insist that it should have been first reduced to a judgment and execution thereon returned unsatisfied.

[7] It is urged that section 20 of the Insurance Reciprocal Act of Illinois (Smith-Hurd Rev. St. 1925, c. 73, § 462) provides the exclusive way of winding up the affairs of such an association. There are several answers to this contention. Only one need be given. The section reads: "If the attorney in fact of any exchange shall refuse or neglect to pay any valid judgment rendered against the subscribers at said exchange within thirty (30) days after said judgment has been made final, then the director of trade and commerce shall revoke his authority to do business in this state if such attorney in fact be the representative of an exchange with central office in another state; but if he be a representative of an exchange with central office in this state,

19 F.(2d)—20

then the director of trade and commerce shall report the same to the attorney general of this state with a request that an injunction be obtained restraining said attorney in fact from further operation of said exchange, and the court on granting such injunction may also appoint a receiver to take charge of the assets of the subscribers of the exchange and wind up its affairs."

The urge that this statute provides the exclusive way of winding up the affairs of the Reciprocal is wholly unsupported by its words. Under certain conditions, it is true, the Attorney General may institute legal proceedings but such a grant of authority to bring suit falls far short of a denial of the right of a member to protect his interests through legal proceedings.

In justice to the District Court, it should be added that the state of Illinois, through its insurance commissioner, gave its consent to the appointment of the receiver, and in fact urged the court to make the appointment. And the Illinois commissioner spoke, not only for the state of Illinois, but for the commissioners of six or seven neighbor states, who were seeking protection for the policy holders.

Other questions presented by appellants have been duly considered, but they do not merit special or separate consideration.

The decree is affirmed.